In the Matter of Franklin A. RIVERA and Virginia Rivera, Debtors.

Bankruptcy No. 80 B 20118.

United States Bankruptcy Court, S. D. New York.

Oct. 27, 1980.

Irving H. Picard, Trustee, New York City.

Gerald A. Kagan, New York City, former Atty., for debtors.

James R. Gmelin, Mount Kisco, for debtors.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The United States Trustee for the Southern District of New York has applied for an order reopening the above–captioned Chapter 13 case which had previously been dismissed without prejudice. The basis for the application is that the United States Trustee seeks an order directing Gerald A. Kagan, Esq., the attorney who had filed the Chapter 13 petition on behalf of the debtors, to turn over to the mortgagee of the debtors' residence the aggregate amount of all monthly mortgage payments transmitted to him by the debtors since April, 1980. The United States Trustee also requests a review of the fee arrangement between Gerald Kagan, Esquire and the debtors with the purpose of obtaining an order directing Mr. Kagan to remit to the debtors the entire amount previously paid to him together with the $60.00 filing fee and cancelling any balance that may be due to Mr. Kagan.

The debtors have joined in the relief sought by the United States Trustee and further request that they be reimbursed for all fees and expenses, including those claimed by the mortgagee, for which they will be liable.

After notice and hearing, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. This Chapter 13 case was commenced by the filing of a joint petition on behalf of Franklin A. and Virginia Rivera on April 1, 1980. (11 U.S.C. § 302(a)).

2. That petition indicated that the debtors were represented in that case by Gerald A. Kagan, Esquire.

3. Attachments to the petition further indicated that:

a. Franklin A. Rivera was employed as a police officer by the New York City Police Department, a position he already had held for seven years, and his salary for 1979 was $18,500.

b. Virginia Rivera was a housewife and had no income.

c. The Riveras have six children, ranging in age from 3 years to 17 years.

d. Aggregate liabilities of $56,259, of which $49,124 was owed to three secured creditors (including a $45,000 mortgage on the debtors' residence at 2622 Farsund Drive in Yorktown Heights, New York) and $7,135 to eight unsecured creditors, and

e. Property, including the home, was valued at a total of $54,200, all of which was claimed as exempt.

4. In his attorney's disclosure statement pursuant to Bankruptcy Rule 219(b), dated March 17, 1980, and executed by Mr. Kagan, he stated that prior to the filing of the petition he had received $500 for legal services rendered and to be rendered and that no balance was due.

5. A meeting of the Riveras' creditors was scheduled and held on April 30, 1980. (11 U.S.C. § 341(a)).

6. The confirmation hearing which had been scheduled immediately following that meeting was adjourned to May 20, 1980,

because, among other things, no application had been filed seeking court approval of the proposed five year plan (see 11 U.S.C. § 1322(c)) and documentation was required concerning the claimed valuation of certain assets.

7. Those matters referred to in paragraph 6 had not been accomplished, and both counsel and the Riveras failed to appear at the adjourned confirmation hearing. Thus, the hearing again was adjourned to June 3, 1980.

8. On June 3, 1980, Mr. and Mrs. Rivera, on the advice of Gerald A. Kagan, Esquire, their then bankruptcy counsel, failed to appear for the second adjourned hearing on confirmation of their Chapter 13 plan. Without explanation, counsel also failed to appear at that hearing. The record indicates that those matters which were to be done by the debtors and their counsel in connection with confirmation were not completed. Accordingly, this court entered an order dismissing the case, without prejudice.

9. On or about August 29, 1980, Mr. and Mrs. Rivera contacted the United States Trustee by telephone after talking to Jeffrey L. Sapir, the standing Chapter 13 trustee, about their concerns as to the handling of their case by Mr. Kagan. They provided the following information concerning their dealings with Mr. Kagan and events subsequent to the dismissal of their Chapter 13 case, which they confirmed in writing in a letter dated September 2, 1980:

a. They contacted Mr. Kagan in March 1980 after seeing his advertisement in a newspaper;

b. They had a meeting with Mr. Kagan at about that time and he informed them that his fee would be $800;

c. After the filing of their petition, they generally had difficulty in reaching Mr. Kagan to obtain advice or information concerning their Chapter 13 case and related matters;

d. Mr. Kagan's office advised Mr. and Mrs. Rivera that he would not be available for the adjourned confirmation hearing on May 20th and that a new date would be obtained;

e. Mr. Kagan informed Mr. and Mrs. Rivera that they did not have to appear at the adjourned hearing on June 3rd;

f. Mr. Kagan advised Mr. and Mrs. Rivera that the June 3rd order dismissing the case was a mere formality and that he would take care of it;

g. On the instructions of Mr. Kagan, the Riveras remitted monthly mortgage payments of $551 to Mr. Kagan as "trustee" during the period April to August (an aggregate of $2,755), but as of September 2, 1980, he had not transmitted any of those payments to Mid Island Equities, the Riveras' mortgagee;

h. Subsequent to the dismissal of their Chapter 13 case, Mr. and Mrs. Rivera were notified on more than one occasion of the mortgagee's intention to foreclose, and Mr. Kagan told them he would take care of everything; and

i. While their Chapter 13 case was pending, Mr. and Mrs. Rivera were served with a complaint filed in another court by a creditor and a notice of a hearing in July, of which Mr. Kagan informed them he would take care, but they later received a notice of default judgment for failure to appear or answer the complaint.

10. By letter, dated September 5, 1980, the United States Trustee wrote to Mr. Kagan and asked for a written explanation no later than September 22, 1980, about those matters referred to in Paragraph 9 above.

11. Mr. Kagan did not respond to that letter.

12. On September 15, 1980, Mr. and Mrs. Rivera commenced a new Chapter 13 case by filing a joint petition in this Court (No. 80 B 20408), after having paid a counsel fee of $400 and another $60.00 filing fee.

13. The foregoing facts were not denied by Mr. Kagan. However, he stated that his

Bankruptcy Rule 219(b) statement was in error and that it should have revealed that his fee was $800. Mr. Kagan admitted the receipt of $2,755 from the debtors for transmittal to the mortgagee, which he said was refused by the mortgagee and which he continued to hold so that the funds would not be dissipated by his clients. He offered to remit the funds to the debtors together with his fee.

14. This is not the only case where Mr. Kagan filed a Rule 219(b) statement in which he stated that his fee for legal services was $500, whereas the true figure was higher. *In re Fuhst,* (No. 80 B 20301) contained a Rule 219(b) statement revealing a $500 fee, whereas Mr. Kagan actually received $1000. This court directed that the entire $1000 be returned to the debtors because his conduct in that case did not merit any fee. *In re Butchman,* 4 B.R. 379, also reveals a Rule 219(b) statement filed by Mr. Kagan listing his fee for legal services as $500, whereas the debtors actually paid him $800. The *Butchman* case is also being reviewed by this Court on application made by the United States Trustee.

## DISCUSSION

It is axiomatic that an attorney owes a sacred duty to his client and to the court to perform his legal services with integrity and earnest consideration. If additionally, counsel performs his services in a professionally competent manner, both the client and the court are benefitted. Professional competence will of necessity vary, depending on the education, experience and skill of the attorney. However, neither the client nor the court expects that the obligations of honesty and care will be satisfied differently, depending upon the attorney retained. All attorneys admitted to the bar, regardless of skill or experience, are obliged to maintain the highest standards of ethical conduct. "Maintaining the integrity and improving the competence of the bar to meet the highest standards is the ethical responsibility of every lawyer." *Canon 1, Ethical Considerations 1–1, Code of Professional Responsibility, 29 McKinney's Consol-*

*idated Laws.* Additionally, an attorney should represent the client competently; *Canon 6, Code of Professional Responsibility, supra,* and zealously within the bounds of the law. *Canon 7, Code of Professional Responsibility, supra.*

This case presents a sordid and sad picture of fast and loose dealing by an attorney who advertised as an expert bankruptcy practitioner, but who performed on a level below that which would be expected of a para legal. He received an $800 fee from his clients, but would have this court believe that in the preparation of the Rule 219(b) statement he erroneously reflected the amount as $500. Conveniently, this "error" occurred in at least two other cases filed by this attorney with this Court and apparently in other cases which he filed in other Bankruptcy Courts in the Southern District of New York. Such conduct is hardly consistent with the standard of integrity required of all attorneys. It is no justification for the submission of such "erroneous" statements that he is now willing to repay the fee after the true facts have been aired; the aroma of mendacity in this case extends beyond the pale of the papers in question.

This attorney instructed his clients to remit their mortgage payments to him for transmittal to the mortgagee threatening to foreclose on their house and that he would make satisfactory arrangements with the mortgagee. He continues to hold the funds and has misled his clients in the belief that he was negotiating with the mortgagee, which in fact was not the case. If this deception were not enough, he then neglected his clients' Chapter 13 case and advised them that they need not appear at the adjourned confirmation hearing, which he then failed to attend, with the result that the case was dismissed by the Court. In the face of this egregious conduct, the attorney then failed to inform his clients that their case had been dismissed. Indeed he had the temerity to advise them that the spectre of the foreclosure action which they and their six children faced was nothing to worry about and that he was handling

everything, notwithstanding the entry of default judgments by dunning creditors who were relieved from the Code § 362 automatic stay provisions after the dismissal of the Chapter 13 case.

That the debtors had to be advised by the Chapter 13 Standing Trustee in August, 1980, that their case, which they believed their attorney was handling, was no longer pending, after they had paid a fee to their attorney for legal services and advice, represents the nadir in professional responsibility.

This court will not even entertain in mitigation of the foregoing circumstances any suggestion that the attorney's advertisements resulted in a volume of cases requiring his appearance in various courts at the same time. The issue before the court involves the moral requirements of honesty and fair dealing; not office management. Clients, adversaries and the court expect an attorney to be truthful and responsible in the performance of his legal services. Anything less cannot be endured if our adversarial judicial system is to function effectively.

### CONCLUSIONS OF LAW

■ 1. The application of the United States Trustee to reopen this Chapter 13 case is granted.

■ 2. Having failed to perform legal services on an acceptable plain of professional behavior, the debtors' attorney shall remit to his clients the full amount of compensation paid by them, cancel any balance due; return the $60. filing fee for their dismissed Chapter 13 case, the monthly mortgage payments received from the debtors aggregating $2,755, together with interest thereon from June 3, 1980, at the rate called for under their mortgage.

■ 3. Additionally, the debtors' attorney will pay to his former clients the legal fees and expenses attending the mortgage foreclosure, amounting to $629.00, together with late charges at the rate of $22.04 per month from June 3, 1980. The $400 counsel fee that the debtors paid their present at-

torney will not be included in the damages sustained by the debtors because, in any event, they would have had to pay a reasonable fee (which this is) to an attorney handling their case.