In the Matter of JOSEPH J. EINHORN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 15, 1982

**APPEARANCES OF COUNSEL**

*Howard Benjamin* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Joesph J. Einhorn,* respondent *pro se.*

**OPINION OF THE COURT**

*Per Curiam.*

The Departmental Disciplinary Committee for the First Department moves for an order confirming a hearing panel's findings of fact and conclusions of law, and for the imposition of appropriate discipline upon respondent.

Respondent Joseph J. Einhorn was admitted to practice in the First Department on June 17, 1931, and maintains an office for the practice of law in the First Department.

On October 18, 1978, pursuant to a settlement agreement between New York Metro Corporation and Federated Development Company, respondent and Robert A. Katz, Esq., both attorneys for New York Metro Corp., agreed to act as joint escrow agents for the sum of $75,000, pending a

nonappealable final judgment in the matter of *New York Metro Corp. v Chase Manhattan Bank*. Under the agreement if New York Metro were successful in its action against Chase, $75,000 would be delivered to Federated and the balance, representing accrued interest, to New York Metro. If the action were dismissed, New York Metro would receive the entire proceeds.

On or about October 24, 1980, respondent, without the knowledge or consent of the coescrowee, or of Federated Development Co., withdrew $30,000 from the account and converted it to his own use by purchasing United States Treasury bills in his name. On two subsequent occasions he repurchased Treasury bills in his own name, and retained the discount on the purchase price. To date no judgment has been rendered in the litigation, and thus the escrow account should not have been disturbed. Written requests have been made by the coescrowee and the attorney for Federated Development, but respondent has refused to return the funds.

Charges were served on respondent on March 19, 1981, alleging that he is guilty of professional misconduct, including having violated DR 1-102 (A) (4), in that he knowingly converted funds entrusted to him. Respondent appeared *pro se* before the hearing panel. It sustained the charges, reprimanded respondent, and referred the matter to this court.

Respondent claims that he is due a fee of $30,000 from New York Metro entitling him to withdraw funds, that he remains ready at any time to return the $30,000 once a judgment is rendered, and that the interest on the principal is not subject to the escrow agreement.

Obviously, an attorney may not convert funds entrusted to him, even to satisfy a debt concededly owed to him by the entrusting party. (See *Matter of Levine*, 65 AD2d 326; *Matter of Scherman*, 34 AD2d 142.) Respondent's claim that he still holds the money in escrow is belied by the purchase orders, which are in his name alone. Moreover, a letter written by him to the coescrowee subsequent to the time he withdrew the money indicates that he intended to take the money for himself in payment of his fee. The

escrow agreement provided that the principal be deposited in an interest bearing account, and, thus, respondent's argument that the interest was not subject to escrow is belied.

Respondent also notes that some checks have been drawn on the escrow account. They were paid either to New York Metro or to the law firm which handled the litigation in the Court of Appeals. But they were apparently drawn against the interest, and the principal was not removed. Moreover, none of the interested parties have objected, and the checks were obviously not drawn for the benefit of one of the escrowees. The payment of the appellate law firm's fee, however, was apparently a compelling factor in respondent's decision to withdraw funds in payment of his own fee.

Respondent has now credited his "ledger" with the $30,000 and the discount on his latest purchase of the Treasury bills. (The Treasury bills are not due until November 4, 1982.) But he did not place the funds in the ledger until after charges had been served against him, and to date he has not returned any of the interest received as a result of his purchase of the Treasury bills. At the hearing, respondent conceded that, as matters now stand, if he died the Treasury bills would be part of his estate.

The charges should be sustained. Although New York Metro apparently owes money to respondent, he did not have the right to remove any of the funds in the escrow account for his own use. DR 9-102 of the Code of Professional Responsibility permits the withdrawal of funds by an attorney for his own use from an escrow account if the funds belong to him and if his client does not dispute his right to the funds. Neither condition has been met here. Moreover, the escrow account is subject to claims other than New York Metro's.

Respondent's transgressions are obviously serious, and under recent disciplinary cases in this court, might warrant disbarment. (See *Matter of Wolf,* 73 AD2d 419; *Matter of Marks,* 72 AD2d 399; *Matter of Stults,* 77 AD2d 254; *Matter of Field,* 79 AD2d 198; but see *Matter of Solomon,* 87 AD2d 137.) In mitigation, however, he has practiced law

for more than 50 years; is 75 or 76 years old; has a prior unblemished record; has, as the panel noted, kept the withdrawn funds intact and identifiable; and apparently has acted out of frustration because of New York Metro's failure to pay the balance of a fee which he claims was earned over 10 years of litigation. The terms of the fee arrangement are not disclosed, although there is no dispute that respondent claims a balance of $30,000. Respondent submitted a $60,000 bill for legal services to New York Metro and was paid $30,000 towards that charge. Moreover, he never sought to hide what he did, and even sent a letter to the coescrowee advising him that he had withdrawn the money.

Thus, his situation is different from those attorneys who have converted funds surreptitiously, even if under a claim of right. His conversion was without permission or prior notice, but he at least gave contemporaneous notice. Furthermore, the claim of entitlement to the funds is not an afterthought. Moreover, we are mindful that, in the circumstances, any suspension, which might otherwise be appropriate, would be tantamount to disbarment because of the likelihood that respondent would have difficulty in resuming his practice.

Accordingly, the motion to confirm the findings of fact and conclusions of law is granted, and on condition that respondent return the principal and all interest earned to the new escrowees within 30 days of notice of entry of the order of this court, he is censured; upon failure to so comply respondent shall be disbarred. Respondent is directed to provide petitioner with proof of compliance and, in the event of noncompliance, petitioner is directed to move this court for an order of disbarment.

KUPFERMAN, J. P., SULLIVAN, ROSS, ASCH and MILONAS, JJ., concur.

Respondent conditionally censured.