OPINION OF THE COURT
Meyer, J.
The United States Supreme Court having vacated our prior order in this matter and remanded for further consideration in light of its decision in Matter ofR. M. J. (455 US 191), we conclude that there is no constitutional infirmity in the application of section 479 of the Judiciary Law and provisions of the Code of Professional Responsibility to respondents’ conduct in approving the mailing by the legal clinic in which respondents are partners to some 1,000 realtors in the Albany area of a letter quoting fees for listed real estate transactions. The order of the Appellate Division finding, respondents guilty of misconduct in so doing but imposing no sanction is, therefore, affirmed.
I
The committee’s petition to the Appellate Division alleged that respondents were admitted to practice in New York, were partners in the legal clinic of Cawley and Schmidt, and were guilty of professional misconduct in that they approved for mailing on the letterhead of the clinic a letter, the body of which is set forth in appendix A of this opinion and the intent of which was to solicit engagement to render legal services in connection with real estate closings, which letter was mailed in August and September of 1979 to approximately 1,000 realtors in the Albany geographical area.
Respondents’ motion to dismiss the petition was denied ' on the basis of our holding in Matter of Greene (54 NY2d 118) that to the extent that section 479 of the Judiciary Law and DR 2-103 (A) of the Code of Professional Responsibility proscribe advertising of attorneys’ services by di *232 rect mail addressed to real estate brokers, those provisions are a constitutionally valid regulation of commercial speech. After the Supreme Court’s denial of certiorari in Greene (455 US 1035), respondents served their answer denying misconduct or that the intent of the letter was to solicit real estate closings, but otherwise admitting the allegations of the petition. The answer pleaded as complete defenses that respondents’ conduct was constitutionally protected free speech, that section 479 of the Judiciary Law on its face forbids all lawyer advertising and thus proscribes constitutionally protected speech, that section 479 on its face violates due process because not all lawyer advertising can be proscribed and the section fails to give sufficient notice of what lawyer advertising is in fact proscribed, and that section 479 as applied to respondents violates due process in that the section was not interpreted to apply to respondents’ conduct until after their letter was sent. It pleaded, further, in mitigation, their assumption based on advice of counsel that their mailing was a permissible form of lawyer advertising.
Respondents then moved to refer the issues raised by the pleadings for a hearing. The Appellate Division denied that motion[1] and found respondents guilty of misconduct but, noting that the letters were sent prior to the Appellate Division decision in Greene and in apparent good faith reliance on Bates v State Bar of Ariz. (433 US 350), determined that no sanction should be imposed (88 AD2d 1089). Respondents’ appeal to our court was dismissed (58 NY2d 689) for want of a substantial constitutional question, but, as already noted, the Supreme Court thereafter granted respondents’ petition for certiorari, vacated our order and remanded for further consideration (460 US_, 103 S Ct 1763).
Respondents now characterize our construction of the governing statute and disciplinary rule in Matter of Greene *233 as a ban on all third-party mailings by attorneys and argue that what is regulated is the content rather than the manner of speech, which under i?. M. J. is permissible only “where the particular advertising is inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive” (455 US, at p 202). They suggest, further, that because Greene was decided after their letter was mailed, their due process right to specificity in the statute controlling their advertising activity has been violated. In our view the first argument misconstrues both our Greene decision and the scope of the Supreme Court’s holding in Matter of R. M. J., and the second overlooks Supreme Court First Amendment cases decided prior to respondents’ mailing as well as governing due process law.
II
Phrased as it is in terms of deception, the first argument all but ignores the crux of the holding in Greene which was that there is “a substantial governmental interest in preventing conflicts of interest in attorney-client relationships which the statute directly protects and for which there is no adequately protective less restrictive alternative.” (54 NY2d, at p 127.) That holding was supported by citations to Matter of Primus (436 US 412),[2] Ohralick v Ohio State Bar Assn. (436 US 447), N. A. A. C. P. v Button (371 US 415) and Mine Workers v Illinois Bar Assn. (389 US 217), all of which establish the substantiality and propriety of the interest. It was, moreover, pointed out that although the potential for conflict had played a part in sustaining a limitation on speech only in Ohralick, the other cases had turned on the broader protection afforded associational activity or, as in Primus, “political expression and association,” in the context of which “a State must regulate with significantly greater precision” (436 US, at p 438). Here, of course, neither political expression nor associational activity is involved.
That the R. M. J. opinion speaks in terms of deception and makes no mention of conflict of interest is not surpris *234 ing, conflict of interest being totally unrelated to the advertising under consideration in that case. To read R.M.J. as restricting to deception the activity that may be controlled is, however, to attribute to the court the unlikely intent to overrule Primus, N. A. A. C. P. and Mine Workers sub silentio and to ignore entirely the citation in the R. M. J. opinion of Ohralick (455 US, at p 202).
Nor can it properly be said that the regulation is of all third-party mailings. The Greene opinion expressly limited its “ruling to third-party mailings to brokers” (54 NY2d, at p 126). Although it also noted that the regulation was of “all third-party mailings, not just mailings to brokers” (id.), that statement must be read in its context, which limits it to third-party mailings involving a conflict of interest. Thus, the regulation was held to be of manner rather than content because of the “detriment to society in the potential conflict of interest that may be generated when those in need of legal services are approached indirectly through a broker” (id.; emphasis supplied), and the associational activity cases were distinguished on the basis of “the absence of monetary stakes for the union or other community group” (id., at p 128), without which there would be no significant danger of conflict or overreaching (Woll v Attorney Gen., 409 Mich 500, 550, on remand 116 Mich App 791; see Matter of Primus, 436 US, supra, at pp 429-431).
Unlike the statute involved in Bolger v Youngs Drug Prods. Corp. (463 US_, 103 S Ct 2875), which prohibited the mailing of unsolicited advertisements for contraceptives, the regulatory provisions here in issue, as limited by our holdings in Matter of Koffler (51 NY2d 140) and Matter of Greene (supra), impose no general ban upon all mailings by attorneys to others than potential clients. What is proscribed is mailing to that limited number of third persons who themselves may have dealings with potential clients of the attorney from which a conflict of interest may result. Wholly unrelated to the content of the letter, the proscription is not against the attorney making known to potential clients the availability of his services or even against his doing so through third parties, but against his doing so in a particular manner: through a third party *235 whose interests may be more closely intertwined with those of the attorney than with those of the client. But the proscription would not foreclose a solicitation such as those involved in the N. A. A. C. P., Mine Workers and Primus cases, all supra (see, also, Ann., 5 ALR4th 866, 877), because such a solicitation presents no potential for conflict of interest.[3] For like reason the fact that a title company remains free to solicit referral business from real estate brokers is simply irrelevant.[4]
Nor do we read R.M.J. as invalidating the proscription as thus defined, as the dissents suggest, because it concerns a potential rather than an actual conflict or specific detriment to a particular client. The Supreme Court held in Ohralick (supra), that where a lawyer’s exercise of judgment on behalf of his client may be clouded by his own pecuniary self-interest and the transaction is not visible or open to public scrutiny, or otherwise subject to effective oversight, the State may constitutionally impose a prophylactic measure whose objective is the prevention of harm before it occurs (436 US, at pp 461, 464-467; see, also, Matter of Primus, 436 US, at p 434). Far from repudiating that concept, the court in Matter of R. M. J. noted that in Ohralick “the Court held that the possibility of ‘fraud, undue influence, intimidation, overreaching, and other forms of “vexatious conduct” ’ was so likely in the context of in-person solicitation, that such solicitation could be prohibited” (455 US, at p 202 [emphasis supplied]). We have spelled out in Matter of Greene (54 NY2d, at p 129), and need not now repeat, how the prohibition of third-party mailings by attorneys to recipients whose client-referrals may involve the recipient and the attorney in a conflict detrimental to the interests of the client relates to the *236 governmental interest, and why it is not more extensive than necessary to serve that interest. We add only, in light of respondents’ suggestion that even a client-referral based on social contact may involve a conflict of interest, that it is not unreasonable for the State to conclude that broker-referrals will more often than not result in conflict but that social-referrals are not inherently conducive of conflict (Ohralick v Ohio State Bar Assn., 436 US, at p 466; Schaumburg v Citizens For Better Environment, 444 US 620, 637-638, n 11).
Ill
Although respondents have a right to fair notice of the acts for which they can be punished, they had notice from section 479 of the Judiciary Law and DR 2-103 (A) of the Code of Professional Responsibility that all solicitation of legal business was proscribed and, as we noted in Matter of Greene (54 NY2d, at p 124), those provisions remain in effect except as they infringe upon constitutionally protected free speech. True, respondents did not have the benefit of either Matter of Koffler (51 NY2d 140, supra) or Matter of Greene (54 NY2d 118, supra) before their letter was sent, but they were then chargeable with-knowledge from Ohralick and Primus, both decided by the Supreme Court on May 30, 1978, and its earlier decisions in N.A.A.C.P. and Mine Workers, that the constitutional invalidity of section 479 did not necessarily extend to solicitation involving personal contact and the potential for conflict of interest.
In the light of that knowledge and the long-standing absolute legislative proscription, respondents’ fair notice rights were not violated (People v Epton, 19 NY2d 496, 506, remittitur amd 19 NY2d 1017, app dsmd and cert den 390 US 29, reh den 390 US 976, second reh den 398 US 944; Dombrowski v Pfister, 380 US 479, 491, n 7; see Rose v Locke, 423 US 48; Wall v Attorney Gen., 409 Mich, at p 544). Application of Greene's construction to conduct occurring prior to that construction involves no violation of respondents’ due process right when, as is here the case, it is clear that respondents’ conduct has been judged not by the legislative standard alone but by that standard as constitutionally limited (see Shuttlesworth v City of Birmingham, 382 US 87, 92).
*237 For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.

. Other than denial of the legal conclusion that they were guilty of misconduct, respondents denied only the allegation of specification 2 that “The intent of said letter was to solicit real estate closings through the realtors of prospective purchasers and sellers of real property”. The intent of the letter is, however, a matter of interpretation of its words in light of the circumstances of its transmission. For the reasons stated in Matter of Greene (54 NY2d 118, 126), we agree that the necessary implication of transmittal of the letter to real estate brokers was to have clients of the brokers referred to respondents for legal work. We agree with the Appellate Division, therefore, that no hearing was required.

. Additional references in Primus to conflict of interest, as well as misrepresentation, as properly subject to governmental control, will be found at pages 426, 432 and 437.

. See Schaumburg v Citizens For Better Environment (444 US 620, 637-638, n 11) pointing out that charitable solicitation because not so inherently conducive to fraud and overreaching as is attorney solicitation could not be prohibited. For like reason the fact, noted in footnote 2 of Chief Judge Cooke’s dissent, that there is no proscription against an attorney representing a client referred by a broker, does not invalidate the regulation under consideration. The potential for conflict is substantially greater when it is the lawyer who seeks client referrals from the broker than when the broker, unsolicited, refers a client to an attorney.

. To the extent that the argument raises equal protection clause objections, as respondents’ citation of Carey v Brown (447 US 455) and Police Dept. of Chicago v Mosley (408 US 92) suggests, the issue is not properly before us, respondents’ answer having raised only free speech and due process defenses.