In re Roosevelt DAMON, Jr., and Elaine Damon, Debtors.

Bankruptcy No. 82 B 11814.

United States Bankruptcy Court, S.D. New York.

May 17, 1984.

The Office of the United States Trustee for the Southern District of New York by Cornelius Blackshear, U.S. Trustee and Harold Jones, Asst. U.S. Trustee, New York City, for trustee.

S. Simpson Gray, P.C., pro se.

HOWARD C. BUSCHMAN III, Bankruptcy Judge.

The United States Trustee for the Southern District of New York ("U.S. Trustee") seeks an order pursuant to 28 U.S.C. § 1481 holding the Law Clinics of S. Simpson Gray, P.C. (the "Law Clinics") in contempt for allegedly violating this Court's Order of September 29, 1983, directing its predecessor, the Law Clinics of Mott & Gray ("Mott & Gray") not to collect an additional $700 in counsel fees unless he obtained, after notice to the interested parties and a hearing, this Court's permission to do so.

The Law Clinics seeks leave to reargue this Court's denial, for failure of the Law Clinics to appear on December 29, 1983, of its motion for additional counsel fees in the pending proceeding.

The U.S. Trustee cross-moves, pursuant to 11 U.S.C. § 350(b) (1978) for an order re-opening the first Chapter 13 proceeding brought by Elaine and Roosevelt Damon (hereinafter the "Debtors" or "Damons"), which was previously dismissed by Order dated July 29, 1982, for the limited purpose of seeking a review of the fee arrangement between the Debtors and Mott & Gray and directing the Law Clinics to remit to the Debtors the fees paid by them in connection with the earlier proceeding and in connection with the currently pending proceeding.

I

### A. The First Chapter 13 Case

In February, 1982, Ninth Federal Savings and Loan, mortgagee, sought to foreclose on the Damon's family home at 3309 Fenton Avenue, Bronx, New York. The Damons received a pamphlet from Mott & Gray, apparently pursuant to a practice of sending unsolicited pamphlets to home owners upon learning of their predicament from published notices of foreclosure or foreclosure sale. After an initial consultation with S. Simpson Gray ("Gray"),[1] they retained Mott & Gray and, on February 16, 1982, filed a joint petition and statement pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *ff.* (1978).

Annexed thereto was a statement purportedly signed by Gray as attorney for the Debtors and filed pursuant to former Bankruptcy Rule of Procedure 219(b). Therein it is stated that the Debtors agreed to pay

---

1. Gray is currently the sole shareholder, officer and director of the Law Clinics. · Mott was a minority shareholder in its predecessor in interest. When Mott & Gray gave way to or became the Law Clinics is not disclosed by the record. In any event, Gray, it appears, had responsibility within both Mott & Gray and the Law Clinics for handling the Damons' proceedings.

Mott & Gray a fee of $560 of which $400 previously had been paid. According to the Chapter 13 statement, the remaining $160 was to be paid pursuant to the Debtors' Chapter 13 plan.

Within two months of the filing of the petition, the mortgagee objected to confirmation. It claimed, *inter alia*, that the plan failed to satisfy § 1322(b)(2) of the Code in that it did not provide for payment of the present value (computed at a 12% interest rate) of the full amount of arrearages due on the mortgage, including legal fees and late charges. The Debtors amended their schedules on April 27, 1982, for a second time to include a previously omitted priority tax claim. The plan was amended accordingly to reflect the increase in the Debtors' monthly payments and, further amended to provide a $900 priority payment to Mott & Gray. The amended schedules continued to state, however, that the Debtors had agreed to pay their attorney the sum of $560, of which $400 had been paid.

Gray thereupon sought the permission of this Court for the Debtors to pay an unstated amount of additional fees as part of an omnibus motion filed on May 8, 1982. In support, he alleged that it was not contemplated that the initial fee arrangement would embrace adversary proceedings. Time records and other supporting information were not supplied. The motion also sought an order vacating and setting aside a post-petition foreclosure of the mortgagee's lien on the Debtors' property and dismissal of the objections to confirmation asserted by the mortgagee. In response thereto, the mortgagee conceded the invalidity of the foreclosure sale and asserted a cross-motion to dismiss the proceeding.

No disposition of these various motions appears in the file. Significantly, there is no order approving the request for additional fees. The Court, per Judge Ryan, apparently after a hearing held July 15, 1982, entered an order dated July 29, 1982, granting a motion by the mortgagee to dismiss the proceeding and plan.[2]

During the course of this proceeding, Mott & Gray, on March 20, 1982, billed the Debtors additional fees of $125 for amending the petition. On April 20, 1982, the Debtors paid Mott & Gray $350. Since Gray testified that he charges $350 for a court appearance, it would appear that this payment was for such an appearance by Gray or an attorney from his firm.

Prior to the confirmation hearing scheduled for July 15, 1982, Mott & Gray informed the Debtors that they owed an additional $560 in fees and demanded full payment. Upon receiving the mortgagee's June 21, 1982 motion to dismiss the proceeding, Mott & Gray informed the Debtors of a charge of $350 for Gray to represent them at the hearing, making a total amount due of $910. It then repeated its demand for full payment stating:

> Payment in full MUST be received prior to the scheduled hearing or Mr. Gray will not be present at the scheduled hearing, your Chapter 13 petition will be dismissed and your house will be sold.

On July 23, 1982, the Debtors transmitted $1,500 to Mott & Gray for deposit in an escrow account from which Debtors testified payments would be made to the mortgagee and Standing Trustee. No accounting for that sum has been made to the Debtors.

## B. *The Second Proceeding*

Within a week after dismissal of the first proceeding, Mott & Gray offered to "reinstate" it for the sum of $350. Six days later Mott & Gray wrote to the Debtors informing them that "We will have to file a new petition," the fee for which would be $750. Gray's records reflect, however, that the Debtors were charged $300 on August 23. Funds from an escrow account, pre-

2. From the record of this proceeding, it appears that the various motions referred to above were adjourned to June 15, 1982, and confirmation had not been ordered. Nevertheless, the motion that was granted in the July 29, 1982 Order sought relief on the ground that the Debtor had failed to make payments pursuant to a plan that had been confirmed on March 21, 1982. No order of confirmation, however, was ever entered in this proceeding.

sumably the mortgage escrow account established on July 23, 1982, were transferred to pay that sum and the $60 filing fee. A new Chapter 13 petition was filed on September 13, 1982.

The Rule 219(b) statement submitted therewith, purportedly signed by Gray as attorney for the Debtors, averred that they had agreed to pay $500 in legal fees, all of which had been paid. In other respects, the new plan bore marked similarity to the former plan even to the degree of stating that the amount owed to the mortgagee consisted solely of the nine months arrears due at the filing of the first petition plus "additional arrears" of $2,506.40. No amount for other charges due under the mortgage or a sum reflecting interest sufficient to provide present value under § 1322(b) of the Code was stated.

The Chapter 13 Standing Trustee responded with a motion to dismiss the petition for lack of good faith on the ground that an immediate second filing constituted an abuse. The mortgagee sought the same relief urging that a lack of good faith was shown by the repeated failure to state the full amount of arrears under the mortgage and the failure to include legal fees as provided in the mortgage and interest reflecting present value. Mott & Gray opposed the motions and filed its own motion seeking permission to extend the plan to sixty months pursuant to § 1322(c) of the Code.

Before these motions came on to be heard, Mott & Gray filed an amended petition on February 8, 1983. That plan provided for the full amount claimed by the mortgagee, including present value interest, amended the Debtor's budget to include the wife's salary from her recently obtained job, restated the Debtors' agreement to pay Mott & Gray $500 in fees and that such sum had been received and claimed $700 in additional fees for Mott & Gray as a priority expense.

This Court, per Judge Ryan, on April 4, 1983 granted the motion to extend the plan to sixty months; the mortgagee, on June 9, 1983, withdrew its motion. The Standing Trustee's motion was apparently withdrawn, for he recommended confirmation of the plan at a hearing held on September 29, 1983 and the plan was so confirmed.

However helpful may have been the amended petition, it appears to have been signed, not by the debtors, but by someone at Mott & Gray. Although Mr. Damon testified at the confirmation hearing that it bore his signature, he demonstrated little familiarity with its contents, particularly the additional fee to be paid to Mott & Gray. Indeed, he was surprised by, and disputed the fee. For that reason, this Court ordered Mott & Gray

> not to collect the $700. However, the Law Clinic of Mott & Gray is hereby granted permission to move this Court within a reasonable time, no more than 60 days, upon notice to the Debtor and to the trustee, and to the United States Trustee, that the Order that I have just made be vacated on the ground that a hearing should be held, and at the hearing proof will be adduced that would indicate that they are entitled to the fee.

Subsequently, Mr. and Mrs. Damon testified, unequivocally, that they had not signed the amended petition. Their testimony is highly credible. Mr. Damon observed that the signature purportedly his lacked the "Jr." that he always employs, a statement confirmed by examination of the petition filed in the first proceeding. The Damons added, moreover, that although they had received the second petition, they never actually signed it because they were unable to reach Mr. Gray and confer with him as to the differences between their original second petition and the amended version.

Not only did the Damons not sign the amended petition, Gray did not actually sign on his firm's correspondence with the Damons and affidavits and other documents filed with this Court, all of which purport to bear his signature. He admitted, at the hearing held on the contempt motion, that he failed to sign, *inter alia,* his Rule 219(b) Statement of February 11, 1982, and his affidavit of January 9, 1983 in

support of his motion for leave to reargue this Court's denial of his motion for additional counsel fees. When it was called to his attention, pursuant to Rule 9011 of the Rules of Bankruptcy Procedure, that the Law Clinics' cross-motion for attorney's fees lacked his signature, he signed that document in open court, explaining that he authorized others, even non-attorneys, to sign his name to correspondence, motion papers and other documents. Comparison of that signature with Gray's purported signature on all papers filed in the first proceeding, including his Rule 219(b) Statement and his motion for additional fees reveals that those papers were not signed by him. The signatures on those documents, moreover, bear a remarkable resemblance to the signatures on his correspondence with the Damons, signatures which Gray has specifically disclaimed. Indeed, it would appear from a similar comparison, that only the signature on Gray's motion to vacate this Court's order of September 29, 1983, would appear actually to be his.

The Debtors' amended plan was confirmed on September 29, 1983. For achieving that result, Mott & Gray charged at least $1,600 as reflected on its internal accounting record. These fees were as follows:

$300 — initial fee;
$350 — representation of the Debtors at a meeting of Creditors held pursuant to § 341 of the Code;
$350 — appearance in October 1982 in opposition to the mortgagee's motion to dismiss;
$400 — court appearance in March 1983; and
$200 — second court appearance in March 1983.

From the same document, it appears that Mott & Gray received the following fees and costs in connection with the second proceeding:

August 23, 1982 — $300 in fees and $60 for costs transferred by Mott & Gray from funds held in escrow for payment to the mortgagee and Standing Trustee;
October 18, 1982 — $700 transferred from same escrow account.

It would appear, moreover, that an additional $200 was paid. Both Chapter 13 statements state that the Damons had paid $500, rather than the $300 reflected above, to Mott & Gray prior to filing the petition. Gray has not explained this discrepancy or denied the $500 payment.

With respect to the escrow account established for the second proceeding, Mott & Gray transferred $500 from the prior account held in escrow to pay the mortgagee and seemingly funded by the $1,500 entrusted to Mott & Gray by the Damons in July 1982. The Damons delivered a further $258.69 and $615 to Mott & Gray on October 7 and October 16, 1982 to be held in trust. Of the $1,373.69 entrusted to Mott & Gray in connection with the second proceeding only $174.00 was paid to the Standing Trustee. None was paid to the mortgagee. The Damons unequivocally deny having consented to these transfers. Gray's position is that, if sums were received in escrow or trust, they were to be employed for the stated purpose.[3]

In addition, a sharp discrepancy exists between the fees received by Mott & Gray and the Law Clinics and those disclosed to the Court. The Rule 219(b) disclosure of a $500 payment amounts to only 50% of the fees actually received. This discrepancy has yet to be explained and was not cured by the Law Clinics' request for payment of an additional $600 in fees, or the contemplated payment of $700 in fees pursuant to the amended plan. The fees sought thereby are in addition to the fees previously paid.

Moreover, the disclosure itself was highly deceptive in at least three distinct aspects. The statement that $500 had been

---

**3.** In his post-trial memorandum, Gray stated "If any monies for legal fees were tendered to counsel, it was not without the consent of the debtors, and was in fact in accordance with Section [A][2] of Disciplinary Rule 9–102." This averment is unsupported by the record. At no time during the hearing on counsel fees did Gray testify that he obtained the Damons' consent to transfer funds out of escrow for application to attorneys' fees. The Damons unequivocally denied giving such consent and that testimony stands alone, uncontradicted by any other evidence.

received either overstated the amount actually paid or referred to another payment. Under either hypothesis, it was not disclosed that $360 had been transferred from an escrow account. In addition, the amended plan statement of $700 in priority payments to the Law Clinics overstated by $100 the amount actually charged by Mott & Gray and the Law Clinics. Furthermore, the motion seeking an additional $600 failed to reveal not just that $360 had been transferred from escrow, but that an additional $700 had been so transferred.

In response to this Court's Order of September 29, 1983, enjoining the collection of additional fees and allowing 60 days for the submission of a motion seeking to vacate that Order if fees were to be sought, the Law Clinics, on November 4, 1983, filed a motion seeking such relief. Before that motion came on to be heard, the Law Clinics, on December 16, 1983, sent a letter to the Damons dunning them for those additional fees. Upon the adjourned return date of the motion, Mrs. Damon appeared in opposition and the Law Clinics failed to appear. The motion was accordingly denied.

## II

We first turn to the U.S. Trustee's motion to hold the Law Clinics in contempt of this Court's Order of September 29, 1983, directing Mott & Gray not to collect additional fees from the Debtors. The sole grounds asserted in support of the motion is the transmittal of the letter of December 16, 1983, demanding payment of $600 in additional fees.

■ The civil contempt power of this Court is beyond cavil. That power and its ancillary of restitution of the costs of securing compliance are derived from 28 U.S.C. § 1481 and from § 105 of the Bankruptcy Code enabling this Court to issue orders necessary to carry out the provisions of the Code.

■ As one of those powers, civil contempt "is essentially a civil remedy designed for the benefit of other parties and

has quite properly been exercised for centuries to ensure compliance with judicial decrees." *Green v. United States*, 356 U.S. 165, 197, 78 S.Ct. 632, 650, 2 L.Ed.2d 672 (1958) (Black, J., dissenting). Two requisites must be shown: knowing violation of a sufficient, specific and precise order, *e.g.*, *In re Baum*, 606 F.2d 592, 593 (5th Cir.1979); *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), *reh. denied*, 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977); *In re Rubin*, 378 F.2d 104, 108 (3d Cir.1967); *In re Parr*, 13 B.R. 1010, 1016, 5 C.B.C.2d 1039 (D.C.E.D.N.Y. 1981); *Frankford Trust v. Allanoff*, 29 B.R. 407, 409, 1 C.B.C.2d 92 (D.C.E.D.Pa. 1983); *In re Lohnes*, 26 B.R. 593, 596 (Bkrtcy.D.Conn.1983); *In re Abt*, 2 B.R. 323, 325, 5 B.C.D. 1237 (Bkrtcy.E.D.Pa. 1980); and knowledge of the order, *e.g.*, *Fidelity Mortgage Investors*, 550 F.2d at 51. Willfulness is not required and intent is irrelevant because of the remedial and coercive nature of civil contempt. *Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed.2d 599 (1948); *United States v. United Mine Workers of America*, 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *McCrone v. United States*, 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108 (1939); *Simkin v. United States*, 715 F.2d 34, 36 (2d Cir.1983); *In re Hilliard*, 83 Civ. 839, slip op. at 3 (SWK Memo. Op. (S.D.N.Y. March 19, 1984); *Andre Matenciot, Inc. v. David & Dash, Inc.*, 422 F.Supp. 1199, 1209 (S.D.N.Y.1976).

■ The Law Clinics' claim that it did not willfully violate the order and that the sending of the December 16, 1983, letter was obviously inadvertent in view of its motion to vacate is thus unavailing. Furthermore, Gray had the affirmative obligation to adopt procedures in his office which would insure that the order was not violated. *See Farber v. Rizzo*, 363 F.Supp. 386, 396 (E.D.Pa.1973).

■ Nor is there any question of knowledge since the Order was given in open court in the presence of a representative of the Law Clinics. *In the Matter of La-Marre*, 494 F.2d 753, 758 (6th Cir.1974).

Also, the Law Clinics does not claim that the sending of the letter did not violate the Order. It apparently recognizes that the Order did not contemplate that the Law Clinics would dun the Damons for payment of additional fees.

■ Whether an order was violated is tested by the unbroken rule that

In contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought; and the facts found must constitute a plain violation of the decree so read.

*Terminal Ry. Ass'n of St. Louis v. United States*, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150 (1924). Thus, contempt will lie for violating an injunction prohibiting the defendant from advertising itself as a school of "contemporary" where the defendant instead held itself out as offering courses in that subject. *Lustgarten v. Felt & Tarrant Mfg. Co.*, 92 F.2d 277 (3rd Cir. 1937). As the court there tersely reasoned "To advertise instruction in 'comptometry' is to advertise a school of 'comptometry.'"

■ The instant matter does not posit exactly those facts. Yet it raises the equally disturbing contumacy there addressed. Transactions between a debtor and his attorney are strictly regulated by §§ 329, 330 and 331 of the Code. When read in this light and in light of the plain wording of the order, it is perfectly clear, "in light of the issues and purpose" of the inquiry leading to the order, *Terminal Railway*, 266 U.S. at 29, 45 S.Ct. at 8, that additional fees were to be sought by motion, as indeed the Law Clinics understood. That command affords no room for dunning the Damons to pay those fees prior to a hearing, much less a decision, on the motion.

■ This is not a case of an ambiguity which is to be construed in favor of the alleged contemnor. *Ford v. Kammerer*, 450 F.2d at 279, 280 (3rd Cir.1971); *Frankfort Trust*, 29 B.R. at 410. Nor is this a case of "untrammelled" exercise of the power. *Bloom v. Illinois*, 391 U.S. 194, 207, 88 S.Ct. 1477, 1485, 20 L.Ed.2d 522 (1968). Rather this is a case implicating the integrity of a court order. The order was not wholly flouted; the Law Clinics brought the motion required. But it was violated and an order of contempt is required. *See, Donovan v. Sovereign Security, Ltd.*, 726 F.2d 55, 59–60 (2d Cir.1984).

### III

■ So, too, must be granted the U.S. Trustee's motion to reopen the Damon's prior Chapter 13 proceeding in order to review the transactions between them and their attorney.[4] Section 350(b) of the Code expressly so provides, stating

[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

Here the motion seeks relief for the debtors in the form of return to them of coun-

---

4. At the hearing on the issue of counsel fees, Gray appeared, but requested an adjournment on the ground that he had been unable to obtain outside counsel. Mr. Gray gave no reason for this failure to obtain counsel, nor did he give this Court any evidence of having made any attempt to engage counsel. He offered only the excuse that, "It takes time." Gray, however, had ample notice of the proceeding, which was the return date for his own motion to reargue a denial of additional attorney's fees. The return date for both the motion and the anticipated cross-motion by the U.S. Trustee seeking a § 329 review was scheduled in Gray's presence and with his consent at the conclusion of the hearing on the motion to hold the Law Clinics in contempt. Moreover, by requesting an adjournment Gray, in effect, was asking for an adjournment of his own motion because he had not yet obtained counsel. This Court denied the motion for an adjournment, seeing it as little more than a delaying tactic. No evidence was presented that Gray had sought counsel who was appearing before another court on the return date or, for other cause, lacked an opportunity to prepare.

sel fees paid in connection with that proceeding. "[O]ther cause" has been construed to include the review of fee arrangements in a particular case as permitted by § 329(b) and Rule 2017 of the Rules of Bankruptcy Procedure. *In re Rivera,* 6 B.R. 686, 3 C.B.C.2d 57 (Bkrtcy.S.D.N.Y. 1980); *In re Butchman,* 13 B.R. 452, 3 C.B.C.2d 377 (Bkrtcy.S.D.N.Y.1980). Review for that purpose is to be commended, particularly in Chapter 13 cases which so often concern individuals lacking knowledge of their rights and peculiarly subject to abuse and overreaching.

 Sections 329(b) and 330 of the Code provide the basis for our review of the fee arrangements in both proceedings. In codifying former Bankruptcy Rule 219, § 329(b) provides that if the compensation paid or agreed to be paid "exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment to the extent excessive, to—

(1) The trustee, if the property transferred

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under Chapter 11 or 13 of this title; or

(2) the entity that made such payment.

The need for judicial review of fee arrangements in bankruptcy could hardly be clearer. "Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." H.Rep. No. 95-595, 95th Cong. 1st Sess. 329 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6285. Section 330(a) and Rule 2016 of the Rules of Bankruptcy Procedure express a similar concern in requiring debtor's counsel to make a formal application to the Court on notice and with a hearing, when seeking interim or final compensation.

Synthesized, these sections and rule designed to allay Congress' concerns, contemplate no less than meaningful and complete disclosure. An attorney's failure materially to comply commands forfeiture of his fee. *See, In re Futuronics Corp.,* 655 F.2d 463, 471 (2d Cir.1981); *In re Arlan's Department Stores, Inc.,* 615 F.2d 925, 932, 937 (2d Cir.1979). Forfeiture is similarly mandated if an attorney violates ethical standards, his fiduciary duties to his client or his duty as an officer of the court. *In re Chou-Chen Chemicals, Inc.,* 31 B.R. 842, 853, 10 B.C.D. 1212 (Bkrtcy.W.D.Ky. 1983); *In re Mattocks,* 15 B.R. 379, 5 C.B. C.2d 764, 775 (Bkrtcy.E.D.N.Y.1981); *In re Wilson,* 11 B.R. 986, 7 B.C.D. 1050, 4 C.B. C.2d 1142, 1147-48 (Bkrtcy.S.D.N.Y.1981); *In re Grant,* 14 B.R. 567, 3 C.B.C.2d 811 (Bkrtcy.S.D.N.Y.1981); *In re Smith,* 5 B.R. 92, 98-99, 106, 6 B.C.D. 506, 2 C.B.C.2d 481 (Bkrtcy.D.C.1980); *see also, Silbiger v. Prudence Bonds Corporation,* 180 F.2d 917, 918, 920 (2d Cir.1950). To permit a fee to stand in the face of violation of ethical standards or fiduciary duties only serves to place this Court in the untenable position of approving such conduct to the disservice of the public and the bar. Attorneys owe more to their clients, to the court and to the profession:

> They are officers of the law, as well as the agents of those by whom they are employed. Their fidelity is guaranteed by the highest considerations of honor and good faith, and to these is superadded the sanctions of an oath. The slightest divergence from rectitude involves the breach of all these obligations. None are more honored or more deserving than those of the brotherhood who, uniting ability with integrity, proved faithful to their trusts and worthy of the confidence reposed in them. Courts of justice can best serve both the public and the profession by applying firmly upon all proper occasions the salutary rules which have been established for their government in doing the business of their clients.

*Baker v. Humphrey,* 101 U.S. 494, 502, 25 L.Ed. 1065 (1879), *quoted in In re Arlan's Department Stores, Inc.,* 615 F.2d at 944.

### A. *Failure of Disclosure and Competent Representation.*

"We deal in this case not with isolated instances of oversight but with a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in these bankruptcy proceedings." *In re Arlan's Department Stores, Inc.,* 615 F.2d at 943. Failure to disclose nearly 47% of the fees paid in connection with the first proceeding and the filing of a deceptive motion seeking attorney's fees do not comport with the full disclosure commanded.

■ That disregard of the statutory command was hardly cured by the amended plan provision of a $900 priority payment to Mott & Gray or by motion seeking payment of additional fees. The plan provision was a nullity. It sought fees for services performed during the proceeding which had not been approved by court order as required by § 330(a) and were additional to those disclosed in accordance with § 329. The motion was woefully inadequate. It merely stated that additional time had been spent in litigation with the mortgagee. It supplied no details such as records of hours spent, services performed and hourly rate charged. This Court could not have awarded such fees absent such information, *c.f. New York State Ass'n for Retarded Children, et al. v. Carey,* 711 F.2d 1136 (2d Cir.1983); *In re Hudson and Manhattan R.R. Co.,* 339 F.2d 114, 115 (2d Cir.1964), and, most significantly, the relief sought was not granted.

Granting such relief would have unwittingly assisted a fraud. The motion was misleading, not merely because it was not signed by an attorney, as required by Bankruptcy Rule 9011: It failed to disclose the receipt by Mott & Gray of $350 of fees for that additional litigation only eighteen days before the motion was made.

■ Such relief would also have unwittingly sanctioned the submission of the Rule 219(b) statement plainly calling for the attorney's signature but not signed by the attorney in violation of § 329 of the Code. That section expressly requires a debtor's attorney to file a statement disclosing the fees paid or agreed to be paid. The statement is a certificate by the attorney of his fee arrangement. Signature by a non-attorney destroys the certificate nature of the statement. It may result in subsequent disavowal, totally contrary to the self-evident purpose of § 329.

This impropriety was repeated upon the filing of the second petition and was compounded by the further impropriety of an attorney's submission of an amended plan bearing the purported signatures of the Debtors but in truth not signed or approved by them. That submission contravened the purpose of §§ 1321 and 1323 of the Code which give the *debtor,* in conjunction with his attorney, the exclusive right to file a plan. H.R. No. 95–595, 95th Cong., 1st Sess. 428 (1977) U.S.Code Cong. & Admin.News 1978, 5787, 6384. Although the Damons have ratified the amended plan and it binds them and their creditors, the impropriety and disregard for proper practice and the repeated failure of an attorney to sign motion papers are factors highly relevant to consideration of an award of attorneys' fees.

But far more than impropriety and disregard occurred in the second proceeding. There, non-disclosure reigned. The attorney's statement understated the fee charged by $1,100. It was never disclosed, not even in the amended plan, that the Damons paid at least $1,000 in fees. This sum is not minor. It constitutes 200% of the amount actually disclosed. Those additional fees, moreover, were for routine matters, *e.g.,* appearances at the § 341(a) meeting with creditors and for court appearances seeming incident to the normal case and surely to be contemplated by any attorney advising the immediate filing of a second petition.

■ Incompetency reigned as well. Having been advised in the first proceeding of the amounts due under the mortgage and the requirements of Code § 1325(a)(5) that the plan provide for present value of a secured claim, Gray filed a plan in the

second proceeding that, nevertheless, failed to provide for such payments. Fees for opposing the resulting motion by the mortgagee to dismiss cannot be sustained and should not have been charged.

Nor can be sanctioned the *in terrorem* tactics employed here to collect fees, particularly where they were employed to obtain fees that were the subject of a motion that had not been granted or had been barred by order of this court.

■ These circumstances preclude the award of any fees, notwithstanding the ultimate confirmation of the Damons' amended plan. *See, In re Futuronics Corp.*, 655 F.2d at 471; *In re Paine*, 14 B.R. 272, 273 (D.C.Mich.1981); *In re Chou-Chen Chemicals, Inc.*, 31 B.R. at 853; *In re Smith*, 5 B.R. at 106. To do otherwise would countenance the deception and incompetency presented here and the failure to comply with the most elementary of rules. The legal process is not, as defined by Ambrose Bierce, a meatgrinder with the lawyer turning the handle. The profession rests on the character of its members and their commitment to a process by which rights are adjudged. The role of an attorney in that process is that of counselor, advocate and advisor, in all these able, learned and trustworthy. Neither the Debtors nor the estate should shoulder the burden of legal representation so lacking in these definitive characteristics.

### B. *Ethical Violations*

Such considerations alone being sufficient to require the return of all fees, they are compounded in this case by claims of ethical violations based on the solicitation of potential clients through mailing a promotional pamphlet and the use of escrowed funds to pay attorney's fees. On this record, the former cannot be sustained; but the improper use of escrowed funds is readily evident so much so that it appears that Gray has no regard for the fiduciary nature of an attorney's duties with respect to such funds.

■ Since the mailing of a promotional pamphlet by an attorney constitutes commercial speech, it necessarily is not subject to blanket restriction. *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). The degree of permissible restraint varies markedly dependent upon whether it is one of content or manner. As to content, misleading speech is not protected, since the First Amendment "does not prohibit the State from insuring that the stream of commercial information flows cleanly as well as freely." *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 777, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Absent proof of a misleading statement, "the state retains some authority to regulate. But the state must assert a substantial interest and the interference with speech must be in proportion to the interest served." *Matter of R____ M.J____*, 455 U.S. 191, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982). That proportion itself is to be drawn in terms of distinguishing regulation of content from regulation of manner. *Matter of Greene*, 54 N.Y.2d 118, 444 N.Y.S.2d 883, 429 N.E.2d 390 (1981). The former, while theoretically possible, *see In the Matter of R____ M.J____*, 102 S.Ct. at 937, has not been sustained since *Bates*, absent proof of a misleading statement. The latter, however, has been sustained "where the State has a strong interest in adopting rules of conduct designed to protect the public ..." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 464, 98 S.Ct. 1912, 1922, 56 L.Ed.2d 444, reh. denied, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978).

■ In identifying that interest, personal solicitation of potential clients has been distinguished from mail advertising. *Id.*, 436 U.S. at 465, 98 S.Ct. at 1923. In cases of personal solicitation, "the potential for overreaching is significantly greater when a lawyer, a professional trained in the art of persuasion, personally solicits an unsophisticated, injured or distressed lay person," its regulation may thus be sustained. *Ibid.*

Mail advertising can easily be discarded by the reader; little, if any, justification can be found for its absolute bar. *Matter of Koffler*, 51 N.Y.2d 140, 432 N.Y.S.2d 872, 412 N.E.2d 927 (1980). Accordingly, N.Y. Judiciary Law § 479 (McKinney's 1975) and DR 2–103(A) of the Code of Professional Responsibility, notwithstanding their all embracive language, have been construed not to prohibit an attorney from mailing a non-misleading form letter to approximately 7,500 owners of real property soliciting the use of the attorney's services in real estate transactions. *Ibid.*

Here, however, the mailing was far more discriminatory. It was limited to those with acute needs. So directed to potential bankrupts, it contained more potential for abuse and overreaching. But persons such as the Damons who face foreclosure on their homes on accelerated mortgages are likely unaware of the remedies provided by the Bankruptcy Code, in particular the opportunity to de-accelerate and cure. *See In re Taddeo*, 685 F.2d 24 (2d Cir.1983).

The state has substantial interest in furthering a free flow of the availability of such advice; it also has a substantial interest in precluding abuse and overreaching. In balancing those interests, the state may regulate but only to the extent that "the regulation directly advances the governmental interest asserted and [only if] . . . it is not more extensive than is necessary to serve that interest." *Central Hudson Gas. v. Public Service Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

Here, the allegedly offending pamphlet was not offered in evidence. Nor is there other evidence of its contents. It is not possible, on this record to determine whether the pamphlet was misleading or gave unsolicited legal advice. *See* DR 2–104.

Nor does it appear that the act of mailing the pamphlet, even to those particularly subject to abuse and overreaching, violated N.Y. Judiciary Law § 479 or DR 2–103(A) as construed by the New York courts. *Matter of Alessi*, 60 N.Y.2d 229, 469 N.Y. S.2d 577, 457 N.E.2d 682 (1983). There it is

taken as given that an attorney may, by mail, make "known to potential clients the availability of his services" in a non-deceptive fashion. 60 N.Y.2d at 234, 469 N.Y. S.2d 577, 457 N.E.2d 682.

To be sure, there is *dicta* in *R____ M.J____*, 102 S.Ct. at 937 indicating that the First Amendment's command may not be so broad. The integrity of the relationship between debtors and their attorneys is of particular concern to the bankruptcy courts. But that integrity can be addressed directly, as it has been done here, pursuant to §§ 329 and 330 of the Code and established authority.

The fact remains that non-deceptive mailing to potential clients is seemingly permitted by state statute as interpreted by state courts having particular responsibility for integrity of the practice of law. The extent of the state's interest having been thus limited, the claim of violation of the state statute so construed cannot be sustained. To rule otherwise would be to establish variant standards of conduct dependent on the choice of forum in which the propriety of an attorney's acts is to be reviewed.

There can be no dispute, however, as to the impropriety of the use of trust funds by an attorney to pay his fee. DR 9–102 (McKinney's 1975) obligates an attorney to preserve the "identity of funds and property of a client." Conversion or commingling of a client's funds also violates DR 1–102(A)(4) and its prohibition of "conduct involving dishonesty, fraud, deceit, or misrepresentation." Censure, suspension or disbarment in those circumstances is warranted. *See, e.g., In re Einhorn*, 88 A.D.2d 95, 452 N.Y.S.2d 437, 438–39 (1st Dept.1982) (censure or disbarment); *In re Miller*, 86 A.D.2d 344, 450 N.Y.S.2d 8, 10 (1st Dept.1982) (disbarment); *In re Crean*, 86 A.D.2d 107, 448 N.Y.S.2d 672, 673 (1st Dept.1982) (disbarment); *In re Rawlins*, 85 A.D.2d 1, 447 N.Y.S.2d 174 (1st Dept.1982) (three-year suspension); *In re Baker*, 76 A.D.2d 684, 432 N.Y.S.2d 37, 28 (4th Dept. 1980) (two-year suspension); *In re Marks*,

72 A.D.2d 399, 424 N.Y.S.2d 229 (1st Dept. 1980); *In re Levine,* 65 A.D.2d 326, 411 N.Y.S.2d 618, 619 (1st Dept.1979). The funds, moreover, were property of the estate. 11 U.S.C. §§ 541, 1306. Their unauthorized conversion deprived both the Debtors and their creditors of them.

Such conduct so contrary to the trust that is at the heart of the attorney-client relationship forfeits the fees earned pursuant to that relationship. It is particularly egregious when it robs the poor of the meager savings that they have entrusted to an attorney in order to save the home in which they and their children reside. To permit an attorney to retain or to claim fees in this circumstance would be an anomaly unknown to the justice the courts are to serve.

## IV

 These conclusions, furthermore, compel the denial of the Law Clinic's motion for reargument of the denial of its motion to vacate this Court's order of September 29, 1983 enjoining the collection of further fees. Since the motion was denied upon the Law Clinic's non-appearance at the hearing on its motion, we treat its current motion as one to set aside its default. As such, three elements are to be considered: excusable neglect, presence of meritorious position on the merits and level of prejudice to the non-defaulting party. *E.g., Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983); *In re Houston,* 32 B.R. 584 (Bkrtcy.S.D.N.Y.1983).

Here no excusable neglect has been shown. Gray asserted only that he must have been before some other court. Such an undefined and contrived claim hardly constitutes evidence of excusable neglect. Nor is there any merit to the relief sought. Additional fees cannot be awarded to an attorney who is entitled to no fees. For those reasons, we need not address the prejudice issue since it is logically dependent on satisfaction of the other two tests.

*Conclusion*

The motion and cross-motion by the U.S. Trustee are granted with costs. The motion of the Law Clinics is denied. The requests by the U.S. Trustee and by the Law Clinics for attorney's fees are denied, except that the U.S. Trustee's motion for attorney's fees in the contempt proceeding is granted. The foregoing constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

Settle Order on notice.