In the Matter of Willie J. HILLIARD and Joyce L. Hilliard, Debtors.

Bankruptcy No. 82 B 20072.

United States Bankruptcy Court, S.D. New York.

Aug. 11, 1983.

Office of the U.S. Trustee, S.D. New York by Cornelius Blackshear, Acting U.S. Trustee, New York City.

Albert J. Sattler, Jr., Peekskill, N.Y., for respondent.

DECISION ON APPLICATION FOR ORDER DIRECTING DEBTORS' COUNSEL TO REMIT CERTAIN FUNDS TO DEBTORS' MORTGAGEE AND FOR A REVIEW OF COUNSEL'S FEE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The United States Trustee for the Southern District of New York has applied to this court for an order directing the Law Clinics of Mott & Gray, P.C., counsel for the debtors in this Chapter 13 case, to turn over to the mortgagee of the debtors' residence all monthly mortgage payments that Mott & Gray has retained since February, 1982. Mott & Gray had instructed the debtors to make their post-petition mortgage checks payable to the order of Mott & Gray and to send them directly to that firm. The U.S. trustee is also seeking a review of the fee arrangement between the debtors and Mott & Gray and an order directing Mott & Gray to refund to the debtors all fees paid to it in connection with its representation of the debtors during the course of this Chapter 13 case, and surcharging Mott & Gray for all

court and administrative expenses attendant to this matter, as well as any legal fees and late charges that may have been incurred by the debtors because of their counsel's failure to turn over the post-petition mortgage payments to the mortgagee.

S. Simpson Gray, an attorney with the Mott & Gray firm, contends in his cross motion that the U.S. trustee more properly should have requested permission to conduct a Bankruptcy Rule 205 examination in order to ascertain the facts and circumstances surrounding this matter, and requests that the U.S. trustee be charged with attorneys' fees and costs for bringing this action. Hence, this court must determine whether the actions of the Mott & Gray firm or Mr. S. Simpson Gray, a member of that firm, warrant a refund to the debtors of any of the fees paid to the firm and whether the mortgage payments were improperly withheld from the mortgagee.

## FINDINGS OF FACT

1. The debtors reside at 602 South Tenth Avenue, Mt. Vernon, New York, 10550. They first visited the Law Clinics of Mott & Gray, P.C. (hereinafter "Mott & Gray") on January 22, 1982, where they met with one Stuart Fink and discussed the possibility of filing a Chapter 13 bankruptcy petition.

2. The debtors explained to Mr. Fink that Mr. Hilliard's tractor-trailer business had failed in February, 1979, when costs were incurred in connection with the breakdown of the trucking equipment. Mr. Hilliard was unemployed for approximately two months, and there were tax obligations due, mortgage arrears of about four months (from September, 1981), as well as medical bills. Mrs. Hilliard testified that she believed Mr. Fink was an accountant.

3. On January 22, 1982, in the office of Mott & Gray, the debtors signed an Attorney Fee Agreement, thereby agreeing to pay a fee of $660 to Mott & Gray for representing them in their Chapter 13 case. The debtors paid $310 on the same date, and signed their Chapter 13 petition. On or about the same date, the debtors also met with one Dorothy Frasca, a paralegal employed by the office of Mott & Gray.

4. On February 3, 1982, Mott & Gray filed a joint Chapter 13 petition on behalf of the debtors, pursuant to 11 U.S.C. § 302. The debtors' petition indicated that they were being represented by Mott & Gray. The Bankruptcy Rule 219(b) disclosure statement annexed to the petition states that the debtors were charged $660 including the filing fee, of which $310 was paid on January 22, 1982, leaving a balance of $350. Subsequently, on March 3, 1982 the debtor made a payment of $300 toward the balance.[1]

5. Mrs. Hilliard testified in the instant proceeding that she first met Mr. S. Simpson Gray, a member of the Mott & Gray firm, at the Bankruptcy Code § 341 meeting held on March 8, 1982. However, Mr. Gray's testimony directly contradicts that of the debtor, in that he has stated that he first conversed with the debtors in February, 1982, when he discussed with them the basic framework and objectives of filing a Chapter 13 plan, and how their home could be protected from foreclosure. However, Mr. Gray also testified that he had not examined the debtors' mortgage nor any papers concerning a foreclosure action at the time he advised the debtors.

6. Mott & Gray sent a letter dated February 10, 1982 to the debtors, advising them that *the court* had ordered an appraisal of their house, that the cost for the appraisal was $300 and that the court requested copies of their income tax returns for the previous two years. The letter was signed by Dorothy Frasca, paralegal.[2] The debtors did not pay the appraisal fee.

---

**1.** It is unclear as to when the debtors paid the remaining $50 balance. However, that they did eventually pay the entire $660 fee is borne out by Mr. Gray's testimony during the May 4, 1983 hearing in this matter, in which he stated that his firm expended 12½ hours in this case for a fee of $775, of which the client (the debtors) *paid $660.* (Tr. p. 32; 5/4/83).

**2.** The request for the appraisal and the tax returns was in no way sanctioned by any direction from this court. Mr. Gray explained

7. The debtors received a letter from Mott & Gray dated March 2, 1982, in which they were instructed to send their mortgage payments in the amount of $409 per month directly to Mott & Gray. Mr. Gray testified that the March 2, 1982 letter was typical of the kind of letter that Mott & Gray customarily sends to their Chapter 13 clients who have encountered difficulties in paying their mortgage installments because the mortgage companies often refuse to accept tendered mortgage payments once a foreclosure action has been commenced. Mr. Gray testified at the May 4, 1982 hearing (Tr. p. 37) that Mott & Gray would hold the mortgage payments as a service to those debtors whose mortgage companies have refused to accept them, thereby ensuring that the funds would be available at confirmation. At that time, Mr. Gray would

"hondle (phonetics) with the mortgage company to work out a deal off the record because there's no way the client could have paid the entire amount of the default under the plan, and offer the mortgage company whatever monies that we had received and work out a deal for—

\*  \*  \*  \*  \*  \*

—and usually they accept it, and they allow the plan and do not object to confirmation." (Tr. p. 36; 5/4/83).

8. Subsequently, the debtors received a March 30, 1982 letter from Mott & Gray, signed by Dorothy Frasca, paralegal, in which Mott & Gray returned one of the debtors' mortgage payment checks which had been made payable to the order of New York Guardian Mortgage Corp., the debtors' mortgagee. The letter instructed the debtors to "issue another check payable to the Law Clinics of Mott & Gray as this check cannot be deposited."

9. Mrs. Hilliard testified that she followed the letter's instructions, and thereaft-

er forwarded a total of eight monthly mortgage payments to Mott & Gray, from March, 1982 through October, 1982 inclusive, each made payable to that firm and each in the amount of $409.00.

10. The eight checks were deposited in two bank accounts held by Mott & Gray; the Barclay Bank of New York and the Marine Midland Bank.

11. Mr. Gray testified that the mortgage payments were kept in separate accounts, but could not recall the total amount of mortgage payments that had been received from the Hilliards, nor did he have in his file the account numbers under which the funds had been deposited. He said that Mott & Gray had offered to turn over the funds to New York Guardian Mortgage, but the offer had been refused.

12. Prior to the scheduled confirmation hearing, Mr. Gray had not informed counsel for the mortgagee that Mott & Gray was holding mortgage funds on behalf of the debtors.

13. The debtors also made a total of eight plan payments to the Standing Chapter 13 Trustee, Jeffrey L. Sapir, from March, 1982 through October, 1982 inclusive, in the amount of $187.21 per month.

14. The debtors' second amended plan, filed on May 14, 1982, failed to be confirmed at a hearing held on September 29, 1982. The proposed plan payments were insufficient to cover claims for taxes filed by the State of New York, the Internal Revenue Service, Chemical Bank and New York Guardian Mortgage Corp. The Chapter 13 Trustee explained that based on the filed claims, the debtors' plan would have to provide for payments totalling $16,500 over the life of the plan whereas the second amended plan that was filed proposed a total payout of only $7400, resulting in a shortfall of approximately $9000.[3]

that the language used in the February 10, 1982 letter was not improper, as it was his understanding that the Standing Chapter 13 Trustee "acts under the auspices of this court." (Tr. 5/4/83, p. 7). Mr. Gray testified that the February 10, 1982 letter sent to the debtors was prompted by a February 5, 1982 letter sent to

Mott & Gray by the Chapter 13 Trustee in which he had requested the appraisal and tax returns.

**3.** The debtors' plan provided for only $173 to be paid to the New York State Department of Taxation, which had filed a claim for $596.

15. Mott & Gray sent a letter dated November 5, 1982 to the debtors advising them that an objection to confirmation had been filed by New York Guardian Mortgage Corp. The same letter also informed the debtors that "[i]n order for Mr. Gray to represent you in this matter, there will be a fee of $350, which must be paid before November 15th, which is the date of the Confirmation Hearing." The letter was signed by Mr. Gray.

16. Stern & Peshkin, P.C., counsel for the mortgagee, New York Guardian Mortgage Corp., had filed an objection to the debtors' plan on November 3, 1982 because it did not accurately reflect the post-petition arrears. Mr. Tamsen, an attorney with the Stern & Peshkin firm, had received on August 2, 1982, the New York Guardian Mortgage Corp. file concerning the debtors. After reviewing the debtors' plan and determining that it did not accurately reflect the mortgage arrears, Mr. Tamsen wrote to the Chapter 13 Trustee on September 13, 1982 and to the debtors on September 24, 1982. Subsequently, on October 1, 1982, Mr. Tamsen telephoned Mott & Gray to suggest that the debtors' plan be amended to reflect the arrears. However, he was unsuccessful in finding any informed person to speak with at Mott & Gray concerning the debtors' case. Mr. Tamsen placed another call to Mott & Gray on October 18, 1982, attempting again to work out a plan modification, but was hindered by Mott & Gray's unresponsive, evasive and uninformed staff. This incident prompted Mr. Tamsen's office to send an objection to confirmation to Mott & Gray on October 20, 1982, and to file it with this court on November 3, 1982. Finally, on November 18, 1982, Mr. Gray's secretary contacted Mr. Tamsen, and the next day Mott & Gray sent a letter dated November 19, 1982 to Mr. Tamsen, requesting an itemization of the claimed mortgage arrears. This letter was signed by Mr. Gray. In response to Mott & Gray's letter, Mr. Tamsen's firm provided the requested information in a December 3, 1982 letter in which a ledger sheet was enclosed that delineated the amounts due.

17. At the November 15, 1982 confirmation hearing, Mrs. Hilliard had an opportunity to speak with Mr. Gray after the court heard the mortgagee's objection. She inquired of Mr. Gray what had become of the mortgage payments that she had been mailing each month to Mott & Gray. Mr. Gray offered no response to the debtor's question.

18. The debtors did not pay the $350 that Mott & Gray had demanded in return for representing the debtors at the confirmation hearing. Mr. Gray testified that his firm customarily requests a fee of $350 to represent debtor clients in *adversary proceedings*. However, in response to the U.S. Trustee's observation that the mortgagee's objection to confirmation had been filed in the form of a motion, Mr. Gray stated that his firm characterizes any litigated matter concerning a Chapter 13 as an "adversary proceeding".

19. Mr. Gray explained that in this case, the $350 fee covered the conversation with the mortgage company representative at the confirmation hearing in which they discussed the amount claimed by the mortgagee to be due; the request for documentation of the claim, and the receipt of such. He stated that the $350 is a fixed fee and it "covers no matter what we do," (Tr. 5/4/83; p. 55), and further explained that after an objection to confirmation has been filed, a $350 fee would be charged even if a mortgagee's representative agreed after a conversation simply to accept whatever sums were offered by Mott & Gray, as debtors counsel. (See Tr. 5/4/83; p. 58).

Mr. Gray also stated that customarily his firm files a motion to dismiss any objection to confirmation and argues the motion in court, but that in this case such a motion was not filed. Mr. Gray testified that Mott

The plan provided for $2024 to be paid to the IRS, whereas the latter had filed a claim for $4290.22, later amended to $4799.73. The amount owed to New York Guardian Mortgage Corp. was provided for in the plan at $2045, as compared with their claim of $6400. In addition, Chemical Bank had filed a proof of claim as a judgment creditor, which was not provided for in the plan.

& Gray was not formally retained to represent the debtors during the November 15, 1982 confirmation hearing, as they did not pay the $350 fee, but stated that he believed the debtors nonetheless were indebted to him for that amount because he "did the work, anyway" (Tr. 5/4/83; p. 50), referring apparently, to his conversation with the mortgagee's representative, and his request for documentation of their claim.

20. The debtors received a letter dated November 23, 1982 from Mott & Gray, advising them that, effective immediately, they were to send all mortgage payments directly to New York Guardian Mortgage Corp. The letter was signed by Mr. Gray. However, Mott & Gray has retained custody of the eight mortgage payments that the debtors had previously sent to the firm. To this date, the payments have not been turned over to the mortgagee, notwithstanding an April 2, 1983 letter sent to Mott & Gray by Peter Tamsen indicating that his firm, Stern & Peshkin, would accept mortgage payments in their capacity as attorneys for New York Guardian Mortgage Corp. Stern & Peshkin received one mortgage payment in January, 1983 in the amount of $409.00.

21. The debtors sent a letter dated November 22, 1982 to the U.S. Trustee's office, which prompted the Trustee's application in this matter.

## DISCUSSION

The United States Trustee appropriately looks to 11 U.S.C. § 329(b) in requesting this court to review the fee arrangement between the debtors and their counsel, the Law Clinic of Mott & Gray, P.C., in light of the facts in this case. This is not the first Chapter 13 case in which the conduct of the Law Clinic of Mott & Gray, P.C. has been questioned by the United States Trustee. See *In re Kathleen O. Chin,* 31 B.R. 314 (Bkrtcy.S.D.N.Y.1983), where S. Simpson Gray was directed to remit $760.00 that was improperly collected in connection with the filing of a second Chapter 13 case. The United States Trustee complains that Mr. Gray's testimony reveals that he was unfamiliar with the facts in this case. This point alone is not significant as long as other lawyers in Mr. Gray's office were aware of the debtors' predicament and gave proper legal advice and competently acted to protect the debtors' interests. Unfortunately the debtors did not receive competent advice.

Mr. Gray directed the debtors to make their post-petition mortgage payments to him rather than to the mortgagee and then never advised the mortgagee of this fact. Thereafter, Mr. Gray and his staff were unresponsive and evasive whenever the mortgagee's attorney attempted to work out a modification of the debtors' Chapter 13 plan to reflect the arrears that the mortgagee claimed. These dilatory tactics prompted the mortgagee to file an objection to confirmation of the debtors' plan which might otherwise have been unnecessary had Mr. Gray not held on to the mortgage payments or had he or his staff been more informed and responsive to the mortgagee's requests with regard to the mortgage arrears. Additionally, Mr. Gray improperly deprived the mortgagee of the use of the $3,863.00 that the debtors deposited with him from March 1982 through October 1982 and also caused the debtors to incur late payment penalties of approximately $147.24. Having created an unnecessary problem, Mr. Gray then attempted to capitalize on it by extracting another $350.00 legal fee for representing the debtors in connection with the mortgagee's objection to confirmation of the Chapter 13 plan that was precipitated by Mr. Gray's own conduct and that of his staff.

Manifestly, Mr. Gray has no right to continue to retain the mortgage payments received from the debtors. These funds belong to the mortgagee and should have been paid to the mortgagee as they came due each month so as to avoid the late charges that were ultimately incurred. It is also clear that the $350.00 fee claimed by Mr. Gray for representing the debtors in connection with the mortgagee's objection to confirmation was unnecessarily incurred as a result of the unresponsive conduct by Mr.

Gray and his staff. Therefore, this fee is denied.

The debtors have already paid Mr. Gray's law clinic $660.00 as a fee for handling their Chapter 13 case, although confirmation has not been achieved. More legal services will be required before the debtors will be able to effect a confirmation of their Chapter 13 plan. Nevertheless, the debtors were side-tracked by Mr. Gray's directions that the post-petition mortgage payments be turned over to him and his failure to advise the mortgagee that he had the payments in his own bank account. Since the debtors will have to retain new counsel to complete this case, it is only fitting and proper that Mr. Gray's firm be directed to remit the $600.00 ($660 less $60 for the filing fee) that the debtor paid to Mr. Gray's law clinic in order to obtain relief under Chapter 13 of the Bankruptcy Code. The conduct of Mr. Gray and his staff provided very little relief for these debtors.

## CONCLUSIONS OF LAW

1. The Law Clinic of Mott & Gray, P.C. shall turn over to the debtors' mortgagee, New York Guardian Mortgage Corp., all post-petition mortgage payments delivered to them by the debtors, together with interest and late charges to which the mortgagee is entitled under the terms of the mortgage in question.

2. The $350.00 fee claimed by the Law Clinic of Mott & Gray, P.C. for representing the debtors in connection with the mortgagee's objection to confirmation of the debtors' Chapter 13 plan is cancelled.

3. The Law Clinic of Mott & Gray, P.C. shall remit to the debtors $600.00 from the fee previously paid to them by the debtors for obtaining relief under Chapter 13 of the U.S. Bankruptcy Code.

4. The claim for costs and expenses in connection with this matter that was asserted by the Law Clinic of Mott & Gray, P.C. is denied.

SUBMIT ORDER ON NOTICE.