In re Robert P. FRICKER a/k/a Robert Peter Fricker, Dolores A. Fricker a/k/a Dolores Arlene Fricker a/k/a Dolores Fricker, Debtors.

Bankruptcy No. 89–11904S.

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 20, 1991.

---

Mark Kravitz, David M. Still, Norristown, Pa., for debtors.

Stephen Raslavich, Philadelphia, Pa., for Acceptance Associates of America, Inc. and "line banks".

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

Joel Friedman, Media, Pa., for Herman Neumann.

Ellen McDowell, Philadelphia, Pa., for Meritor Sav. Bank.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The issue which this court finds is instantly presented for disposition in this previously-dismissed Chapter 13 case is the right of Counsel for the Debtors to retain or receive additional compensation when Counsel has failed to comply with the requirements of 11 U.S.C. § 329(a) and Bankruptcy Rule ("B.Rule") 2016(b), *i.e.*, that Counsel must file a statement of compensation paid or agreed to be paid within 15 days of any arrangement with the debtor for payment or amendments thereto. We find that Counsel's violation of these requirements is serious and could justify disgorgement of all of the fees received by Counsel to date (represented to be $14,-

741.11), as well as bar any further recovery of fees by Counsel. However, in light of the fact that Counsel, with partial justification, requests $54,128.09 as additional reasonable compensation; we can perceive no equity in according a windfall to the Debtors who would normally receive the disgorged fees; and we believe that, prior to this Opinion, Counsel may have harbored some doubts as to its responsibilities, we will allow Counsel to retain the fees already received with the exception of a $1,000 fine to be remitted to the Clerk of this Court.

### B. FACTUAL AND PROCEDURAL HISTORY

The tortuous history of the principal litigation in this case has been set forth in three previously-published Opinions, *In re Fricker*, 113 B.R. 856 (Bankr.E.D.Pa.1990) ("*Fricker I*"); *In re Fricker*, 115 B.R. 809 (Bankr.E.D.Pa.1990) ("*Fricker II*"); and *In re Fricker*, 116 B.R. 431 (Bankr.E.D.Pa. 1990) ("*Fricker III*"). *Fricker I* and *Fricker II* provide what appeared to be a resolution of the complex dispute between, principally, the Debtors, ROBERT P. FRICKER and DOLORES A. FRICKER ("the Debtors"), and one of their secured creditors, ACCEPTANCE ASSOCIATES OF AMERICA, INC. ("*AAA*"). Those two decisions, taken together, *inter alia*, set aside a sheriff's sale of the Debtors' residence to one HERMAN NEUMANN ("Neumann"), *Fricker I*, 113 B.R. at 873; fixed the secured claim of AAA at $40,000, *Fricker II*, 115 B.R. at 828; and directed the Debtors to file an Amended Chapter 13 Plan consistent with our dispositions or possibly face dismissal of their bankruptcy case. *Id.*

Although we believe that these results were a deserved compliment to creative and tenacious advocacy on their behalf by the Debtors' Counsel, LIVINGSTON & STILL, P.C. ("Counsel"), several of the actions of Counsel during the course of these proceedings demanded condemnation. These included repeated failures to comply with deadlines set by this court, *Fricker I*, 113 B.R. at 859–60, which we found, in

*Fricker II*, were characterized by a "stubborn resistance" to the court's efforts to resolve these matters in a logical sequence. 115 B.R. at 813. The most serious and relevant to the instant dispute of Counsel's improprieties are described, at *id.*, as follows:

This pattern [of conduct of Counsel] continued through a sequence in which Neumann moved to compel the Debtors' counsel to divulge the status of funds which the Debtors were allegedly paying in escrow to their counsel towards their obligation to Meritor Savings Bank ("Meritor"), the first mortgagee on their home. After orally stating that we would do so in a colloquy on Neumann's motion on March 13, 1990, we entered an Order that day directing the Debtors' counsel to provide an accounting of these funds within one week. Counsel for the Debtors failed to do so. On April 4, 1990, Neumann filed a motion to enforce this Order. On May 3, 1990, at a hearing on this motion, the Debtors' counsel (incredibly) tried to argue that he was unaware of the Order because the Clerk's Office sent to his street address instead of his post-office address, despite the fact that (1) the mail dispatched by the Clerk's Office was not returned and hence was presumably delivered; (2) he should have heard us indicate our directive in open court on March 13, 1990; and (3) a copy of the Order was attached to Neumann's motion to enforce the Order. We directed the Debtors' counsel to provide the accounting in oral form to the court and all interested counsel on May 7, 1990, and in written form on May 8, 1990. The accounting produced so reluctantly revealed the reason for counsel's unwillingness to readily provide it. While the Debtors had deposited $21,087.88 with their counsel, $12,474.72 had been withdrawn by their counsel, without court approval, for attorneys' fees and litigation expenses; $5,063.50 had been paid to the Chapter 13 Trustee; $3,530.00 was expended on their business, Brutus, Inc. ("Brutus"); and a balance of but $19.66 remained. These revelations will probably trigger an action by the Trustee

against the Debtors' counsel under 11 U.S.C. § 549. They also suggest that the Debtors may not have the resources to prepare a confirmable Plan and are generating motions, appeals, and a general stonewalling mode simply to put off the day of reckoning as to whether they can prepare a confirmable Plan. To prevent any such strategy from succeeding, our Order will schedule a firm date for Confirmation forthwith.

Counsel failed to file the Amended Plan which our Order directed, devoting its efforts to unsuccessful attempts to stay the confirmation hearing instead. *Fricker III*, 116 B.R. at 434. The Debtors were therefore compelled to attempt to achieve confirmation of their original Plan, which had not been adapted to the results in *Fricker I* and *Fricker II. Id.* at 434–35. Among our findings, in concluding that the Debtors' plan was not confirmable, was the failure of the Debtors to establish that their Plan was "proposed in good faith," pursuant to 11 U.S.C. § 1325(a)(3). *Id.* at 440–42. Most relevant to the instant dispute are the following passages relevant to Counsel's receipt of fees, *id.* at 441:

The Debtors' failure to comply with the terms of the Plan, despite having the apparent financial ability to do so, also constitutes most disturbing improper post-petition conduct. The Plan called for concurrent payments to be made to Meritor and the IRS. The Debtors remitted sums to their counsel sufficient to maintain these payments, but counsel, on their behalf, chose to illegally divert these sums to payment of his own fees. Again, no corrective action was taken by the Debtors or their counsel in the face of our condemnation of this conduct in *Fricker II*, [115 B.R. at 813, 827]. Again, as we indicated at page 440 *supra* [of *Fricker III* ], we are compelled to attribute these improper and protested actions by the Debtors' counsel to the Debtors themselves.

Although the district court stayed our Order of July 26, 1990, pending appeal, it ultimately dismissed that appeal on March 14, 1991, in C.A. No. 90–5556, when Coun-

sel failed to file a Brief, despite Counsel's unsuccessful attempt to petition to the Third Circuit Court of Appeals in mandamus to compel the district court to delay the briefing schedule. On that same date, the district court dismissed seven other appeals pending from various Orders related to *Fricker I* and *Fricker II* as moot.

On January 24, 1991, while these appeals were pending, EDWARD SPARKMAN, ESQUIRE, the Standing Chapter 13 Trustee ("the Trustee"), filed an Objection to Counsel's retention of any compensation for its services related to the case, as Counsel still had not, to that day, filed an Application requesting this court to approve its compensation. Counsel failed, without explanation, to attend a hearing of February 19, 1991, on the Objection, causing us to enter an Order requiring Counsel to file an Application for Compensation by March 8, 1991, or be limited to total compensation of $500, and thereafter scheduling a hearing on March 14, 1991, to show cause why the payments of $12,472.72 reported as previously received by Counsel should not be disgorged.

On March 8, 1991, Counsel filed a "Nunc Pro Tunc Application for Allowance of Interim Compensation," requesting approval of fees for its services of $14,741.11 and costs of $5,547.95 for the period between July 6, 1989, and August 3, 1989, only. After the hearing on March 14, 1991, we entered an Order of March 18, 1991, requiring Counsel to file and serve upon all interested parties, by April 8, 1991, a supplemental Application designating *all* compensation requested by Counsel for services performed during the entire case, and also a copy of any notice filed pursuant to Bankruptcy Rule ("B.Rule") 2016(b) in this case; a statement of all compensation actually received from the Debtors, [J. Mark] Kravitz, [Esq., initial counsel for the Debtors in this case ("Kravitz")], or any other source; and any Memorandum which they wish to file supporting their right to retain any compensation to which they believe that they are entitled, in light of B.Rule 2016(b), 2017 and Local B.Rule 2002.2.[1]

On April 8, 1991, Counsel filed an "Application for Allowance of Supplemental Compensation." In this Application, Counsel stated that it had been paid a total of $14,741.11, including $1,410 remitted to it by Kravitz which had previously been paid to Kravitz by the Debtors. The Application recited services performed through August 24, 1990, which purportedly supported an award of $63,351.50 for services and $5,547.95 for costs, leaving an unpaid balance of $48,580.14 for services plus the unpaid costs of $5,547.95. Although a Memorandum of Law was attached, no copy of a B.Rule 2016(b) Statement was produced, which was not surprising to the court, because none had been located in the file. Counsel ultimately conceded that no 2016(b) Statement had or has ever been filed.

AAA and Neumann filed Objections to this Application. They contended that many of the hours of services designated were attributable to past and ongoing "obdurate and dilatory conduct" of Counsel. They took specific issue with a statement which seemed to indicate that compensation was requested from not only the Debtors, but also from "their adverse parties," a group which they believed may have been intended to include them. *But see* page 22 n. 2 *infra*. Finally, they stated that Coun-

---

1. Local Rule 2002.2

Application for Compensation of Professionals in Chapter 12 and Chapter 13 Cases

(a) Any amount to be paid as compensation or reimbursement of expenses to a professional in excess of $500 in a Chapter 12 or a Chapter 13 case is allowable only by a separate Application.

(b) Notice of the Application, as required by N.B.R. 2002(a)(7) and (c)(2), shall be mailed by the professional to all interested parties, including the debtor, and certification of service of same shall be filed with the court.

(c) A copy of the Application itself shall be served upon the trustee and certification of service shall be filed with the court.

(d) If no Objection is filed to the Application after twenty (20) days notice, a Certification of No Objection may be filed by the professional. A hearing may be scheduled in the discretion of the court whether any Objection is filed or not.

sel's failure to comply with B.Rule 2016(b) should restrict Counsel's compensation to $500.

A hearing on the Objections was delayed by Counsel's allegation that discovery of asbestos contamination in its offices prevented its access to files and ability to prepare for the hearing. Finally, the hearing was conducted, on July 25, 1991, in the form of a non-evidentiary colloquy including Counsel, Counsel for AAA, and the Trustee. At its conclusion, we entered an Order of July 25, 1991, directing the Trustee to

> submit a Brief or Statement regarding (1) His view as to how the process for awarding compensation in a Chapter 13 case should proceed; (2) Whether the process was followed in this case; and (3) In what amount (if any) payments to the Debtors' counsel should be authorized or disgorged and, if disgorged, to whom payments should be made, on or before August 30, 1991.

Other interested parties were allowed until September 6, 1991, to respond.

Unfortunately, the Trustee did not render his submission until September 9, 1991, and then he submitted only a "Statement" of less than two pages in text. Upon its receipt, we entered an Order allowing the other interested parties an extension until September 16, 1991, to respond to the Statement. The essence of the Trustee's Statement in reference to the issues in question is summed up in the following excerpt therefrom:

> while there is a requirement that an Application for fees be filed, there has never been definitive conclusion as to when said Fee Application should be filed. This Trustee has taken the position that the Fee Application should be filed prior to confirmation of the case and/or immediately after receipt of said fees by counsel. In the instant case, in light of the fact that the Fee Application was filed only after repeated requests of the Court, ... all fees received in excess of $500.00 should be returned to the debtor [sic].

Only Neumann responded to the Trustee's submission, arguing that the Debtors, as parties perhaps more culpable than Counsel, should not be the recipients of any fee payments directed to be disgorged. Rather, Neumann proposed that all fees received by Counsel be paid, in the nature of a fine, to Meritor.

The paucity of submissions from the Trustee and from interested counsel in even a case where feelings of personal animosity among counsel ran high once again proves that this court must ultimately oversee fee matters, because of the Trustee's lack of resources to devote to this issue and the lack of financial incentives of apparently interested parties to do so. *See In re Reader*, No. 87–3701, Memo. Op., at 2–3 (3d Cir., March 10, 1988) [845 F.2d 1014 (Table)]; *In re Metro Transportation Co.*, 107 B.R. 50, 53–54 (E.D.Pa. 1989); *In re National Paragon Co.*, 87 B.R. 11, 13 (E.D.Pa.1988); *In re J.A. & L.C. Brown, Inc.*, 75 B.R. 539, 539–40 (E.D.Pa.1987); *In re Volunteers of America Delaware Valley, Inc.*, Bankr.No. 89–11177F, slip op. at 2–4 (Bankr.E.D.Pa. June 24, 1991); *In re Leedy Mortgage Co.*, 126 B.R. 907, 915–16 (Bankr.E.D.Pa.1991); and *In re Patronek*, 121 B.R. 728, 730 n. 4 (Bankr.E.D.Pa.1990) (bankruptcy court must review all fee applications *sua sponte*). *See generally* Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (1985) ("the court must ... monitor the disbursements of the fund and act as fiduciary for those who are supposed to benefit from it"). *But see In re Jensen's Interiors, Inc.*, 132 B.R. 105, 105 (E.D.Pa.1991); and *In re Pendleton*, C.A. No. 90–1091, 1990 WL 29645 (E.D. March 15, 1990) (bankruptcy court cannot reduce a fee request in absence of objections).

## C. DISCUSSION

### 1. THIS COURT HAS JURISDICTION TO DETERMINE THE FEES TO WHICH COUNSEL IS ENTITLED, EVEN THOUGH IT DISMISSED THIS CASE.

At the outset, we note that this court has jurisdiction to determine the pro-

priety of the compensation received by Counsel even though this case has been dismissed, and that dismissal of this case has been affirmed by the district court. *See In re Samford,* 125 B.R. 230, 234 (E.D.Mo.1991); and *In re Post,* 119 B.R. 566, 568–69 (S.D.Ohio 1989). *Cf. Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2454–57, 110 L.Ed.2d 359 (1990) (court has jurisdiction to consider a Rule 11 motion despite its dismissal of the case in which the motion was filed).

This court's duty of oversight of fee matters embraces a broad supervisory power over any fees charged in contemplation of, or in connection with, a bankruptcy case by both attorneys and lay persons, as provided in the Bankruptcy Code and Rules. *See In re Fleet,* 95 B.R. 319, 338 (E.D.Pa.1989). It is inconceivable to us that an attorney could avoid subjection to this power of oversight by simply dismissing a case which, in a Chapter 13 case, is a matter of right. 11 U.S.C. § 1307(b).

We therefore do not doubt our power to consider the propriety of Counsel's retention of, and possible right to collect, additional fees from the Debtors. We view this matter, as any matter involving an award of fee to professionals, as intrinsically involved with administration of a debtor's estate, and therefore a core proceeding under 28 U.S.C. § 157(b)(2)(A), which this bankruptcy court must determine. 28 U.S.C. § 157(b)(1).

2. COUNSEL'S TIMELY FILING OF A 2016(b) STATEMENT IS MANDATORY IN ANY BANKRUPTCY CASE, AND THE FAILURE TO DO SO GENERALLY RESULTS IN ELIMINATION OF COUNSEL'S RIGHT TO COLLECT ANY FEES FOR SERVICES PERFORMED IN THE CASE.

■ The principal issue which we deem to be presented by the instant matter is the significance of Counsel's failure to file a statement of the compensation paid or to be paid to him at any time prior to his performance of services. This failing on the part of Counsel has resulted in the accumulation of a bill of significant size and Counsel's actual receipt of a smaller, but nevertheless significant, sum, prior to approval of Counsel's receipt of any sum by this court, and prior to any notice to this court indicating what fees Counsel alleged were payable to it.

The Code section relevant to this issue is 11 U.S.C. § 329, which provides as follows:

§ 329. **Debtor's transactions with attorneys**

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12 or 13 of this title; or

(2) the entity that made such payment.

The timing of the filing of the requisite statement, a topic not addressed in 11 U.S.C. § 329, is established in B.Rule 2016(b), as follows:

(b) **Disclosure of Compensation Paid or Promised To Attorney for Debtor.** Every attorney for a debtor whether or not the attorney applies for compensation, shall file with the court *within 15 days after the order for relief,* or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The state-

ment shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. *A supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed* (emphasis added).

The significance of what is termed herein as the "2016(b) Statement," and the serious consequences which therefore follow from the failure to submit the 2016(b) Statement, are well established. B.Rule 2016(b) is described in 8 COLLIER ON BANKRUPTCY, ¶ 2016.04[1], at 2016–18 (15th ed. 1991), as a "significant part of the disclosure scheme in the area of compensation" which is set forth in the Bankruptcy Code. Collier notes that the sanctions generally applied for failure to comply with 11 U.S.C. § 329 and B.Rule 2016(b) as "harsh … regardless of the deficiency in the disclosure and regardless of the reasons." *Id.*, ¶ 2016.04[1], at 2016–19. Collier also concludes that Rule 2016(b) disclosures must be "precise and complete," with no excuses, such as "inadvertence, neglect or ignorance," for non-compliance with these requirements being acceptable. *Id.*, ¶ 2016.-01[1], at 2016–20 to 2016–21.

Thus, in *In re Kero-Sun, Inc.*, 58 B.R. 770 (Bankr.D.Conn.1986), mistaken omission of a disclosure of counsel's pre-petition agreement to be paid $75,000 by the debtor's lenders in the 2016(b) Statement resulted in an order that the entire $75,000 sum be turned over to the debtor's estate, in keeping with the policy of upholding the disclosure requirements with an "inflexible standard." *Id.* at 779–80.

*In re WPMK, Inc.*, 42 B.R. 157 (Bankr.D. Hawaii 1984), involved the receipt by counsel for the debtor-in-possession ("DIP") of $20,000 from three investors, disclosure of which was omitted from a 2016(b) Statement. Counsel argued that, even if the non-disclosure of this sum and its source was in violation of former B.Rule 219(b), the predecessor to B.Rule 2016(b), no actual conflict of interest or overreaching on his part had occurred, and the failure to disclose the otherwise pertinent information should be excused. The court rejected this argument, and required counsel to disgorge all fees paid, even those unrelated to the improperly-received fees on the basis of a "public policy … to avoid even potentially conflicting situations." *Id.* at 163.

Similarly, in several consumer cases considered together in *In re Devers*, 33 B.R. 793, 799 (D.D.C.1983), the court concluded that, irrespective of *actual* harm effected by counsel to the debtors or any parties, noncompliance with former B.Rule 219(b) constituted breaches of counsel's fiduciary duties to the court and warranted the severe penalties of denial of all compensation in all cases in which such Statements were omitted.

The importance of a prophylactic rule which results in significant consequences for any violations of disclosure requirements set forth in 11 U.S.C. § 319 and B.Rule 2016(b) follow from the result of the Supreme Court's decision in *Woods v. City Nat'l Bank*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941), wherein the Court denied compensation to a professional who was subject to conflicting interests, but who claimed that no unfairness to any party actually resulted from the conflicts. *See also, e.g., In re Anderson*, 936 F.2d 199, 204–05 (5th Cir.1991); *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925, 943–44 (2d Cir.1979); *In re Trinsey*, 121 B.R. 462, 464, 469 nn. 1, 3 (Bankr.E.D.Pa.1990) ("*Trinsey II*"); *In re Meyer*, 50 B.R. 3, 4 (Bankr.S.D.Fla.1985); and *In re Lavender*, 48 B.R. 393, 396–97 (Bankr.E.D.Ark.1984).

3. THERE IS A PARTICULAR NEED FOR THE FILING OF A TIMELY 2016(b) STATEMENT IN CONSUMER CASES, SINCE COUNSEL NEED NOT BE APPOINTED BY THE COURT AS A PREREQUISITE TO RECEIPT OF COMPENSATION FROM THE DEBTOR'S ESTATE IN SUCH CASES.

We are cognizant that several (but not all) of the cases cited and discussed herein have been Chapter 11 cases featur-

ing DIP's. In cases involving a DIP, counsel must generally be appointed by the court as a prerequisite to receipt of any compensation for services. *Compare In re Trinsey,* 115 B.R. 828, 831–32 (Bankr. E.D.Pa.1990) (*"Trinsey I"*) *with In re St. Joseph's Hospital,* 102 B.R. 416, 417 (Bankr.E.D.Pa.1989). The only exception permitted arises in very narrowly-drawn extraordinary circumstances in which a professional is allowed appointment on a *nunc pro tunc* basis. *See In re F/S Airlease II, Inc. v. Simon,* 844 F.2d 99, 105–08 (3d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); *In re Arkansas Co.,* 798 F.2d 645, 648–57 (3d Cir.1986); and *St. Joseph's, supra,* 102 B.R. at 417.

■ Even after appointment has become effective, counsel may obtain or retain compensation only upon court approval of fee Applications which provide very specific descriptions of the dates, times, and services provided, *see In re Meade Land & Dev. Co.,* 527 F.2d 280, 283–84 (3d Cir.1975); and *St. Joseph's, supra,* 102 B.R. at 418, and can obtain reimbursement for only such costs as are not only itemized but also well-documented. *See In re Mayflower Associates,* 78 B.R. 41, 47–48 (Bankr.E.D.Pa. 1987).

■ On the other hand, counsel for the debtor in a Chapter 7 case, a Chapter 13 case, or a Chapter 11 case in which a trustee has been appointed need not obtain appointment as a professional as a prerequisite for receipt of compensation. *See In re Designaire Modular Home Corp.,* 517 F.2d 1015, 1018–19 (3d Cir.1975); and *Trinsey I, supra,* 115 B.R. at 832. *But see In re Urrutia,* 114 B.R. 342, 344 (D.P.R.1990). However, in order to justify compensation from the assets of a debtor's estate, which in a Chapter 13 case includes all post-petition earnings of the debtor, 11 U.S.C. § 1306(a)(2), counsel for the debtor must establish that the services performed actually benefitted the debtor's estate at a level of proof higher than in a Chapter 11 case which features a DIP, *see Designaire, supra,* 517 F.2d at 1019; *In re Hydrocarbon Chemicals, Inc.,* 411 F.2d 201 (3d Cir.1968);

and *Trinsey I, supra,* 115 B.R. at 835, since such cases feature a trustee whose duty is to act in the betterment of the estate.

■ We believe that the absence of the requirement of counsel's obtaining appointment prior to rendering compensable services for a debtor in a Chapter 13 case heightens the significance of strict compliance with the disclosure requirements pertaining to appointment of counsel under the Bankruptcy Code and Rules in such a case, as compared to a case which involves a DIP. Counsel for a DIP cannot receive compensation until appointment *and* approval of a fee application by the court occurs. Meanwhile, no similar checkpoints exist for a Chapter 13 debtor's counsel. While it is true that, pursuant to this court's policy, the Trustee will not distribute any payments contemplated to be received under the terms of a Chapter 13 plan to the debtor's counsel prior to court approval of a fee application, there is no means of controlling payments which are made directly to counsel by a Chapter 13 debtor. As the facts of this case well illustrate, payments directly to counsel by a debtor may not be insignificant in amount. It is only by review of the 2016(b) Statement that the Trustee, the court, or any interested party can be apprised of the debtor's intentions to pay counsel before such payment occurs.

Furthermore, there is no definite time established for the submission of an application for compensation. Such an application may, therefore, be submitted after the fact of payment has been accomplished. While an order requiring disgorgement of fees paid to which counsel is deemed not ultimately entitled may result, it is often more important to be apprised of counsel's intentions *before* resources of the debtor are expended in their fulfillment. For this reason, the 2016(b) Statement takes on a special significance in a consumer case such as a Chapter 13 case. Strict compliance with the requirements for making such a Statement is therefore heightened in this context.

For this reason, we conclude that the timely filing and amendment, where neces-

sary, of a 2016(b) Statement is an absolute prerequisite to receipt of compensation by counsel representing a Chapter 13 debtor. Further, we find that it is necessary that such a Statement be as specific as possible in reciting the actual dollar amount of compensation which counsel expects to receive. It is *not* sufficient compliance to recite a vague, open-ended figure, *see In re Black,* 116 B.R. 818, 821 (Bankr.W.D.Okla.1990) (disclosure of "$750 + per contract" found insufficient), or to merely set forth counsel's hourly rate to be charged with no realistic estimate of the hours anticipated to be expended. It is especially important to be precise in disclosure of the projected amount of the fee when counsel anticipates that the total charge for services will exceed the normal maximum charge for handling a typical Chapter 7 or Chapter 13 consumer case in this district, *i.e.,* $700 and $1,200, respectively. *See Patronek, supra,* 121 B.R. at 733–35.

4. A FEE APPLICATION MUST BE PROMPTLY FILED IN A CASE WHERE COUNSEL RECEIVES COMPENSATION OF MORE THAN $500.

■ We concur with the Trustee's position that a fee application, pursuant to 11 U.S.C. § 330(a), B.Rules 2016(a) and 2002(a)(7), and L.B.Rule 2002.2 should be filed, in a Chapter 13 case, prior to confirmation of the plan and *immediately* after counsel's receipt of any compensation in excess of $500 in a Chapter 13 case. The requirement of an immediate filing upon receipt of the fees is particularly significant in a case which is dismissed prior to confirmation. As indicated at page 10 *supra,* the bankruptcy court retains jurisdiction of the issue of appropriate compensation of counsel even after dismissal occurs, and must be vigilant to protect debtors from being obliged to pay large fees for services in *unsuccessful* Chapter 13 cases. In a Chapter 7 case, the fee application should be filed shortly before discharge.

We underscore the policy of this court and the Trustee not to allow any distribution to counsel for the debtor in a Chapter 13 case unless and until an application for compensation is filed, duly noticed to all interested parties, and approved by the court. This policy has the effect of policing the filing of fee applications in many Chapter 13 cases, because attorneys often structure Chapter 13 plans so that payment of at least a portion of fees is derived from plan payments. However, in Chapter 7 cases and in Chapter 13 cases where no plan payments to counsel are contemplated, the duty to file a timely fee application nevertheless rests with counsel and must be strictly enforced by this court.

■ When counsel fails to comply with the duty to file an accurate and complete 2016(b) Statement *or* the duty to file an accurate and complete fee application, which unfortunately occurs with some frequency and delays administration of cases as well as creating a possibility that counsel will receive an unjustified windfall, it is necessary that this court take firm measures to enforce its rules of practice. Retention of compensation in an amount greater than $500 in the absence of the filing and approval of a timely application for compensation is improper. Retention of *any* compensation when a timely and adequate 2016(b) Statement has not been filed and served is improper. In circumstances where counsel engages in improper acts, it may be necessary for this court to not only disallow compensation to counsel, but also to fine counsel and/or suspend counsel from practice in this court. *See In re Assaf,* 119 B.R. 465 (E.D.Pa.1990) (attorney suspended for failure to adhere to a bankruptcy court order requiring repayment of fees and ignoring other orders of this court).

5. APPLICATION OF THE FOREGOING PRINCIPLES TO THE INSTANT CASE: THIS COURT WOULD BE TOTALLY JUSTIFIED IN DENYING ALL COMPENSATION TO COUNSEL FOR ITS SERVICES IN THIS CASE.

■ Application of the foregoing principles to the instant matter leads to the conclusion that this court would be justi-

fied in denying all compensation to Counsel, despite Counsel's performance of considerable services in this case. No 2016(b) Statement of any sort was ever filed by Counsel, nor was any supplemental statement filed, even when it became obvious to Counsel that its fee would greatly exceed the $1,200 "high normal" charge for representing Chapter 13 debtors.

Furthermore, Counsel never filed any fee application until March 8, 1991, when ordered by this court to do so pursuant to its Order of February 20, 1991. The filing of the application, even with considerable prompting, transpired six months after the case had been dismissed and over nine months after Counsel's receipt of compensation came to light *and* we had emphasized the impropriety of Counsel's retention of *any* fee without the submission of a fee application in *two* Opinions of this court, *Fricker II*, 115 B.R. at 813, 827; and *Fricker III*, 116 B.R. at 435, 441. We might note that, by failing to file an appropriate application to recover fees against AAA and Neumann under 41 P.S. § 407(b), conditioned upon return of its own fees, *see Fricker II*, 115 B.R. at 827, 828, Counsel forfeited the Debtors' rights to such fees, possibly for the selfish reason of not wishing to risk the court's direction that it must return any fees charged.[2] Moreover, the Application finally filed addressed only services performed for a brief period, *i.e.*, July 6, 1989, through August 3, 1989. A complete application was not filed until April 8, 1991, about eleven (11) months after the impropriety of Counsel's receipt of fees was brought to the court's attention and was the subject of comment by the court.

Finally, the Application ultimately filed is rife with lumping of different services together and the failure of counsel to specifically describe the services performed. *See St. Joseph's, supra,* 102 B.R. at 418; *In re Metro Transportation Co.*, 78 B.R. 416, 418 (Bankr.E.D.Pa.1987), *aff'd in part &*

*remanded in part,* 107 B.R. 50 (E.D.Pa. 1989); and *In re Amatex Corp.*, 70 B.R. 624, 627–28 (Bankr.E.D.Pa.1985). We note that Counsel was not bashful about requesting that some of his worst examples of poor judgment, *e.g.*, the labors in the many frivolous appeals and the action in mandamus against the district court, are worthy of compensation, reflecting poor "billing judgment."

We also deem it appropriate to comment unfavorably upon Counsel's practice of having the Debtors make payments to Counsel for disbursement instead of directly to the payees under the Plan (notably the Meritor and the Trustee), thus allowing Counsel to allocate these payments as it wished, as described at page 935 *supra.* This practice is dangerous to debtors and counsel alike, and we believe it should be avoided. The dangers to debtors are chronicled in such cases as *In re Damon,* 40 B.R. 367, 371–74 (Bankr.S.D.N.Y.1984); *In re Hilliard,* 32 B.R. 267, 271–72 (Bankr. S.D.N.Y.1983); and *In re Rivera,* 6 B.R. 686, 689–90 (Bankr.S.D.N.Y.1980), where counsel failed to remit payments made by the respective debtors to the appropriate payees. The practice may be dangerous to counsel also, because debtors' payments (especially if by check) are not necessarily reliable, and counsel may be left without reimbursement for payments made. This practice also permits counsel to disburse compensation to itself without filing otherwise-necessary fee applications.

In the instant setting, there was no indication of improprieties by Counsel comparable to those at issue in *Damon, Hilliard,* and *Rivera, supra.* However, the practice of receiving and disbursing all of the Debtors' payments did permit Counsel to receive compensation without filing requisite fee application and thus permitted it to evade, for a considerable period of time, the oversight function of this court. This practice should be discontinued in the future.

There is, therefore, no basis upon which any "adverse parties" to the Debtors, such as AAA or Neumann, could now be assessed for attorneys' fees payable to the Debtors or Counsel.

**2.** As we noted in *Fricker III*, 116 B.R. at 442–43 n. 4, it appears that our judgment in favor of the Debtors in *Fricker I,* including the award of attorneys' fees pursuant to 41 P.S. § 407(b), was vacated by effect of 11 U.S.C. § 349(b)(1)(B).

The amount of the fees improperly retained by Counsel was not insubstantial. The instant factual sequence was, in many respects, an object lesson for why the procedures outlined herein regarding the filing of a 2016(b) Statment and a fee application at page 941 *supra* should and must be followed strictly.

### 6. SAME: JUSTIFICATIONS NEVERTHELESS EXIST FOR ALLOWING COUNSEL TO RETAIN ALL BUT $1,000 FROM THE FEES PAID TO COUNSEL BY THE DEBTORS.

Nevertheless, we are not inclined to apply the harsh, normative penalty of requiring Counsel to disgorge all of the fees received by it in the course of its representation of the Debtors, for several reasons. Most important is our observation that any fees disgorged would apparently have to be repaid to the Debtors. This resolution is clearly appropriate in those cases where debtors have been victimized by improprieties of counsel. *See, e.g., Devers, supra,* 33 B.R. at 795, 799; *Damon, supra,* 40 B.R. at 370, 379–80; *Hilliard, supra,* 32 B.R. at 272; and *Rivera, supra,* 6 B.R. at 690. However, we fail to find that the instant Debtors were "victims" of Counsel. The Wife–Debtor, in testimony before us at the confirmation hearing, after the improprieties in Counsel's payments had come to light, expressed no dissatisfaction whatsoever, either by words or other body language on the witness stand, with Counsel's receipt of fees from the escrow account established by the Debtors with Counsel. *See Fricker III,* 116 B.R. at 436. A strong possibility exists that the Debtors were parties to any improprieties of Counsel, and that Counsel's actions may have been taken to shield the Debtors from charges of other improprieties on their own part. *See id.* at 440.

On the other hand, it does not appear that any of the Debtors' creditors are entitled to payment of any sums remitted by the Debtors, even those paid to the Trustee, because the Debtors' case was ultimately dismissed prior to confirmation. *See* 11 U.S.C. § 1326(a)(2). As of the date of dismissal, an estate of the Debtors to which payment could have been made no longer existed.

Neumann, in his most recent submission, suggests that we should direct that the funds be paid over to Meritor, allegedly the rightful recipient of the funds held in escrow with the Debtors' Counsel. *See* page 937 *supra.* However, in addition to questioning our ability to direct that monies be paid to creditors of Chapter 13 debtors whose plan has been dismissed prior to confirmation, we note that Meritor, in particular, has never joined in the Objections to Counsel's fee application and has not requested that any payments be made to it. In a colloquy with this court, counsel for Meritor informed us that Meritor was being paid by the Debtors, and therefore had no cause to seek relief from them. We are very hesitant to make reluctant recipients the beneficiaries of payments which we order disgorged by counsel. *Cf. Trinsey II, supra,* 121 B.R. at 470–71.

Therefore, it appears that any compensation disgorged by counsel should normally be remitted to the payees, *i.e.,* the Debtors. *See* 11 U.S.C. § 329(b). Since we find the alternative of repayment to the Debtors to be distasteful, we are disinclined to so order. We therefore find that there is no appropriate party-recipient for the funds which we would direct Counsel to disgorge.

Secondly, we note that the responsibilities of counsel for a Chapter 13 debtor with respect to the duties prior to receipt of fees, which have become clear to us in the course of preparation of this Opinion, were not so clear to us when we began. Although it is now apparent to us that Counsel's main transgression was the failure to file or supplement a 2016(b) Statement, our initial reaction to learning that counsel had received over $12,000 without any notice to the court or other interested parties was that Counsel's failure to file a fee application was its principal wrongdoing. *See Fricker II,* 115 B.R. at 813, 827; and *Fricker III,* 116 B.R. at 435, 441. Therefore, it is reasonable to conclude that Counsel, unlike those who may violate the same rules hereafter, may have been unaware of its duties.

Thirdly, despite the inexcusable excesses and self-defeating lapses of decorum by Counsel in the course of its representation of the Debtors, we must observe that Counsel expressed imagination and vigor, and (perhaps more importantly) expended considerable billable hours in representing the Debtors in attempting to extricate them from most difficult circumstances. All too often, the sins of counsel of Chapter 13 debtors in this court are those of omission. It is somewhat refreshing to encounter excessive vigor in advocacy in behalf of needy parties by private counsel for Chapter 13 debtors. Such efforts should not be unrewarded.

It is clear that, while this court would be totally justified in compelling Counsel to disgorge *all* fees paid to it by the Debtors, this court also has the discretion to more perfectly fit the "punishment" to the particular "crime." *See, e.g., Anderson, supra,* 936 F.2d at 204–06 (counsel awarded $82,500 out of $318,830 requested because of receipt of undisclosed retainer); *In re New England Caterers, Inc.,* 115 B.R. 724, 730–31 (Bankr.D.Mass.1989) (although counsel was found to have been guilty of "inexcusable lack of candor in breach of its fiduciary duty to the Court" for failing to disclose the receipt of monthly retainers from the debtor for one year, a sanction of reducing the fee award by fifty (50%) percent was all that was imposed); and *In re D.L. Enterprises,* 89 B.R. 107, 110–12 (Bankr.C.D.Cal.1988) (failure of counsel to make full disclosure sanctioned by reduction of fee request of about $50,000 by $13,345).

We will therefore not require Counsel to repay any of the $14,741.11 received by Counsel in this case from the Debtors. However, we will bar Counsel from collection or receipt of any further compensation from the Debtors (or any other party) in this case. We will also impose a relatively modest "penalty" upon Counsel by directing that Counsel pay a fine of $1,000 to the Clerk of this court as a sanction for ignoring the requirement to timely file a complete and accurate 2016(b) Statement. *See In re Hargis,* 73 B.R. 622, 627 (Bankr. N.D.Tex.1987), *rev'd on other grounds,* 887 F.2d 77 (5th Cir.1989), *revised on reh'g,* 895 F.2d 1025 (5th Cir.1990) (law firm for DIPs which received compensation without appointment and with scant disclosure of its compensation was ordered to repay all compensation received, plus pay an additional $25,000 fine, to the Clerk of Court; this order was reversed on appeal solely because the compensation was found to have been made from life insurance proceeds which were not property of the debtors' estate, a point not in issue here).

### D. CONCLUSION

An appropriate Order will be entered.

### ORDER

AND NOW, this 20th day of September, 1991, upon consideration of Objections of Acceptance Associates of America, Inc. and Herman Neumann to the Application of the Debtors' Counsel for Compensation; the Statement of the Standing Chapter 13 Trustee in reference to the process for awarding compensation to debtors' counsel in Chapter 13 cases in this court; and the comments of Neumann in response thereto, it is hereby ORDERED AND DECREED as follows:

1. The Objections are SUSTAINED in part.

2. The Debtors' Counsel, LIVINGSTON & STILL, P.C. ("Counsel"), shall be permitted to retain $13,741.11 from the $14,741.11 sum previously paid to them by the Debtors, but shall not be permitted to request or retain any sums in excess of this amount from any party in consideration for services performed or costs expended in connection with this case.

3. Counsel shall pay the sum of $1,000 to the Deputy in Charge of Bankruptcy Operations as a fine or penalty for its improper conduct and provide evidence to the court in chambers of such payment on or before September 30, 1991.